NAEGELE OUTDOOR ADVERTISING, INC., PETITIONER v. THOMAS J. HARRELSON, AS SECRETARY OF TRANSPORTATION OF THE STATE OF NORTH CAROLINA, RESPONDENT

No. 9210SC913

(Filed 21 September 1993)

**Highways, Streets, and Roads § 32 (NCI4th)— temporary exposure of junkyard to view — unzoned area commercial — outdoor advertising permissible**

The temporary exposure of a junkyard to view by highway construction work was sufficient to render an unzoned area commercial for the purposes of the Outdoor Advertising Control Act even though the junkyard would eventually have to be screened from view or removed under the Junkyard Control Act. Therefore, plaintiff was entitled to permits for outdoor advertising in the area of the junkyard where the junkyard was clearly visible from the road at the time the permit applications were submitted. N.C.G.S. §§ 136-129(5), 136-144(1), 136-147.

**Am Jur 2d, Advertising §§ 24, 25; Zoning and Planning § 323.**

Judge GREENE dissenting.

Appeal by respondent from Judgment entered 30 June 1992 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 7 July 1993.

*Wilson & Waller, P.A., by Betty S. Waller and Brian E. Upchurch, for petitioner-appellee.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Elizabeth N. Strickland, for the State.*

LEWIS, Judge.

On 12 June 1991 Naegele Outdoor Advertising, Inc. (hereafter "Naegele") filed a petition seeking judicial review of a final decision of the North Carolina Department of Transportation (hereafter "DOT") denying its requests for outdoor advertising permits. The trial court granted Naegele's motion for summary judgment, denied DOT's motion for summary judgment, and ordered DOT to issue two permits to Naegele. DOT now appeals.

When DOT began construction on new N.C. Highway 16 in Gaston County in 1989, it exposed a previously hidden junkyard to view from the road. According to its duties set forth in the Junkyard Control Act, DOT attempted to remove or screen the site from view. In February 1990 District Engineer C.S. Ledbetter wrote to Mr. Tony Drum, owner of the junkyard, Sports Car Salvage, Ltd., advising him that the junkyard was nonconforming and would have to be removed or screened. In September 1990 DOT authorized the use of project funds for the screening, and in March and April 1991, DOT planted 50 Cypress trees in front of the junkyard to act as a natural screen.

On 20 October 1989, prior to the installment of any screening devices, Naegele applied for three outdoor advertising permits along Highway 16 in the area of the junkyard, claiming that the view of the junkyard rendered the unzoned area commercial for the purposes of outdoor advertising. Ledbetter returned Naegele's deposit on 25 October 1989 because the highway construction was not completed. On 20 July 1990 Naegele again applied for two permits in the same area, and Ledbetter again returned Naegele's checks, explaining that DOT was in the process of obtaining federal funds to screen the junkyard. Naegele submitted its third application for permits on 18 January 1991. On 8 February 1991 Ledbetter denied these applications for failure to comply with the North Carolina Administrative Code and the Outdoor Advertising Control Act, stating that the commercial activities were not visible from the roadway and that the business was scheduled to be screened.

Naegele appealed the denial of its third request on 8 March 1991 to the Secretary of DOT, Thomas J. Harrelson. On 2 May 1991, Harrelson upheld the denial of the permits because the commercial activity was not normally visible from the roadway, but was only temporarily visible due to a construction project and had been screened. Naegele filed its petition for judicial review of

Harrelson's decision on 12 June 1991. As stated above, the trial court ruled in favor of Naegele, and DOT now appeals to this Court.

The issue before us is whether the temporary exposure of a junkyard to view by highway construction work is sufficient to render an unzoned area commercial for the purposes of outdoor advertising laws, even though the junkyard must eventually be screened from view or removed. Analysis of this issue involves examination of the inter-relationship, if any, between the Outdoor Advertising Control Act, N.C.G.S. §§ 136-126 to -140 (hereafter "OACA"), and the Junkyard Control Act, N.C.G.S. §§ 136-141 to -155 (hereafter "JCA").

According to section 136-129 of the OACA, outdoor advertising is not permitted "within 660 feet of the nearest edge of the right-of-way of the interstate or primary highways in this State so as to be visible from the main-traveled way thereof . . .," except in designated situations, which include "[o]utdoor advertising, . . ., located in unzoned commercial or industrial areas." § 136-129(5) (Cum. Supp. 1992). Unzoned commercial or industrial areas are defined by the rules and regulations as "[t]hose areas which are not zoned . . . and which are within 660 feet of the nearest edge of the right-of-way . . . in which there are located one or more permanent structures devoted to a commercial or industrial activity or on which a commercial or industrial activity is actually conducted . . . ." N.C. Admin. Code tit. 19A, r. 2E.0201(c)(1) (Nov. 1990). However, an activity is not commercial or industrial if it is "not visible from the main traveled way." N.C. Admin. Code tit. 19A, r. 2E.0201(a)(9)(D) (Nov. 1990).

The JCA states that

> [n]o junkyard shall be established, operated or maintained, any portion of which is within 1,000 feet of the nearest edge of the right-of-way of any interstate or primary highway, except . . . [t]hose which are screened by natural objects . . . so as not to be visible from the main-traveled way of the highway at any season of the year or otherwise removed from sight or screened in accordance with the rules and regulations promulgated by the Department of Transportation.

N.C.G.S. § 136-144(1) (1986). A junkyard lawfully in existence along any highway "which may be hereafter designated as an interstate

or primary highway and which does not conform to the requirements for exception under G.S. 136-144 hereof, shall be screened, if feasible, by the Department of Transportation . . . ." N.C.G.S. § 136-147 (1986).

According to DOT, because the junkyard "was only fortuitously and temporarily opened up by [DOT's] construction project," and because DOT had a duty under section 136-147 to screen the junkyard, that site could not qualify as a commercial activity under the OACA. DOT claims it is "clearly the intent of the JCA and the OACA to keep outdoor advertisers from claiming such junkyards as activities for qualifying unzoned areas as commercial or industrial when [DOT] is in the process of screening such junkyards."

Naegele defends the trial court's ruling, arguing that the two statutory schemes are unrelated. Naegele stresses that its permit applications must be viewed at the time they were submitted, when the junkyard was clearly visible from the road. The fact that the site would eventually be screened, if feasible, is irrelevant. The outdoor advertising statutes do not stipulate whether or not the commercial activity must be permanent or visible for a certain amount of time. The view of the junkyard and the fact that it is a commercial activity conducted within 660 feet of the highway satisfies the statutory requirements. Thus, according to Naegele, the permits should have been issued by DOT, and the trial court acted correctly in ordering DOT to issue them.

Finding no support for DOT's argument, we agree with Naegele. The OACA and the JCA do not reference each other, nor do they in any way indicate that they are somehow related. *But see* N.C. Admin. Code tit. 19A, r. 2E.0201(a)(2)(J) (March 1993) (recent amendment, not applicable to the case at hand, excludes illegal and nonconforming junkyards, as defined by N.C.G.S. §§ 136-146 and -147, from the definition of commercial and industrial activities for the purposes of the outdoor advertising laws). We find DOT's duty to screen or remove the junkyard did not change the fact that the exposure and location of the site qualified the area as an unzoned commercial area under the OACA.

DOT also argues that the issue is now moot, because zoning ordinances adopted in January 1992 prohibit outdoor advertising in the area in question. This argument is meritless. As Naegele points out, its application for the permits must be viewed under the facts and laws as they existed at the time of the application,

in January 1991. There were no relevant zoning ordinances in effect at that time.

DOT finally contends that the commercial activity did not qualify the area as an unzoned commercial area under the regulations because its permanent building was more than 660 feet from the road. However, as stated above, the applicable regulation states that an "unzoned commercial area" includes areas "within 660 feet of the nearest edge of the right of way . . . in which there are located one or more permanent structures devoted to a commercial or industrial activity or on which a commercial or industrial activity is actually conducted . . . ." N.C. Admin. Code tit. 19A, r. 2E.0201(c)(1) (Nov. 1990). Although the junkyard's permanent building is more than 660 feet from the road, there is commercial activity conducted within 660 feet of the road, thereby satisfying one of the definitions of an unzoned commercial area.

According to the regulations, an outdoor advertising "permit along with a permit emblem shall be issued upon proper application, approval and the payment of fees for lawful outdoor advertising structures." N.C. Admin. Code tit. 19A, r. 2E.0208(a) (Nov. 1990). It appears that Naegele satisfied all the requirements for the issuance of the requested permits. We hereby affirm the trial court's grant of summary judgment for Naegele and denial of the same as to DOT.

Affirmed.

Judge EAGLES concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I disagree with the majority's conclusion that Naegele's application must be viewed at the time it was made, without regard to the fact that the Department of Transportation had a statutory obligation to screen the junkyard.

The Department of Transportation's construction project exposed the junkyard to view from the highway. The junkyard, however, will remain visible only until such time as the Department of Transportation screens it from the view of the highway, as

the Department is required to do when a lawfully existing junkyard becomes exposed to view from an interstate or primary highway. N.C.G.S. § 136-147. The fact that the junkyard was temporarily visible while the construction project was in progress is not sufficient to render the previously unzoned area commercial for purposes of the Outdoor Advertising Control Act (the OACA). *Cf.* 19A NCAC 2E .0201(a)(3) (Feb. 1989) (recodified as 19A NCAC 2E .0201(a)(2)(c) (March 1993)) (temporary activities shall not be considered commercial or industrial for purposes of controlling outdoor advertising). Accordingly, the Department of Transportation was correct in denying Naegele's application for outdoor advertising permits which were filed while the construction was in progress. I would therefore reverse the trial court and remand for entry of summary judgment for the Department of Transportation.