711 A.2d 425 (1998)
312 N.J. Super. 225
Rocco DINIZO, Jr., Plaintiff,
v.
PLANNING BOARD OF THE TOWN OF WESTFIELD and the Town of Westfield, Defendants.
Superior Court of New Jersey, Law Division, Union County.
Decided January 8, 1998.
*426 James B. Flynn, Westfield, for plaintiff.
William S. Jeremiah, Westfield, for defendant Planning Board of the Town of Westfield (Buttermore, Mullen, Jeremiah and Phillips, attorneys).
Charles H. Brandt, Westfield, for defendant the Town of Westfield.
PISANSKY, J.S.C.
This is a zoning case in which the plaintiff Rocco Dinizo, Jr. (Dinizo) appeals the decision of the defendant Westfield Planning Board (Board) denying his application for a subdivision and bulk variances related thereto.
Dinizo applied to the Board to subdivide Lot 71, Block 5004, on the Tax Map of the Town of Westfield, being commonly known as 191 Tudor Oval, into two lots. The existing lot (20,250 square feet) is a rectangle with a frontage and width of 135 feet and a depth of 150 feet. The required area for a lot at the time of the application was 8,000 square feet. The proposed subdivision would create one lot (11,250 square feet) on which an existing house is located, with a front and width of 75 feet and a depth of 150 feet, and *427 one vacant lot (9,000 square feet), with a front and width of 60 feet and a depth of 150 feet. The application required two variances for pre-existing nonconforming conditions related to the existing house on the property. Those pre-existing nonconforming conditions were a side yard of 8.6 feet where a side yard of 10 feet was required and a front yard of 44 feet where a front yard of 38 feet to 42 feet was required. The Board denied the application on June 3, 1996, finding that Dinizo failed to show that the application could be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the zoning plan and zoning ordinance (N.J.S.A. 40:55D-70, the negative criteria). Thereafter, on December 2, 1996, the Town Council, on recommendation from the Board, adopted a zoning ordinance amendment which changed the zone of the subject lot from the RS-8 zone to the RS-12 zone. In the RS-12 zone, Dinizo's property cannot be subdivided without an additional variance as to the proposed vacant lot, since such lot is now deficient in frontage and width. Further, other variances would be necessary since the proposed lots would not now comply with the front yard, side yard and lot area requirements.
Dinizo argues that the action of the Board in denying his subdivision and variances related therewith was arbitrary, capricious and unreasonable. The Board denies this and further contends that "the time of the decision rule", as set forth in Kruvant v. Mayor & Council, Tp. of Cedar Grove, 82 N.J. 435, 414 A.2d 9 (1980), is applicable, and a decision to grant the subdivision and variances when the application was made would now be invalid under the present zoning ordinance.
In order to find that the subdivision and related bulk variances should have been granted by the Board, this court must find that the Board's action was arbitrary, capricious or unreasonable. Ring v. Mayor and Council of Bor. of Rutherford, 110 N.J.Super. 441, 445, 449, 266 A.2d 129 (App.Div. 1970), certif. den. 57 N.J. 125, 270 A.2d 28 (1970), certif. den. 401 U.S. 911, 91 S.Ct. 876, 27 L.Ed.2d 810 (1971). As to the related bulk variances, normally Dinizo would have to show both positive and negative criteria why the variances should have been granted. Nash v. Board of Adjustment of Morris Tp., 96 N.J. 97, 102, 474 A.2d 241 (1984). However, the Board, pursuant to the provisions of Sec. 901(a) of the Westfield zoning ordinance, found that the pre-existing nonconforming side yard and front yard as to the existing dwelling did not have a significant impact on the subdivision being proposed by Dinizo and, therefore, he was not required to establish the positive criteria of a bulk variance request under N.J.S.A. 40:55D-70(c)(1).[1]
Consequently, the only issue remaining before this court is whether the Board was in error in not granting the subdivision and bulk variances because Dinizo did not satisfy the negative criteria. To meet the negative criteria, the applicant must show that the granting of the variance (1) will not be a substantial detriment to the public good, and (2) will not substantially impair the intent and purpose of the zoning plan and zoning ordinance.
As to the first prong of the negative criteria, the Board must focus on the variance's effect on the surrounding properties. The Board must evaluate the impact of the variance upon the adjacent properties and determine whether or not it will cause such damage to the character of the neighborhood as to constitute "substantial detriment to the public good." Medici v. BPR Co., 107 N.J. 1, 22 n. 12, 526 A.2d 109 (1987). The critical word here is "substantial." Yahnel v. Bd. of Adj. of Jamesburg, 79 N.J.Super. 509, 519, 192 A.2d 177 (App.Div.1963). Does the granting of a variance to have a side yard of 8.6 feet instead of 10 feet and a front yard of 44 feet instead of 38 feet to 42 feet, where those violations exist today and will exist whether the variance is granted or not, cause "substantial" detriment to the neighborhood? The answer is obvious. It would not.
As to the second prong of the negative criteria, it is clear that the Board's denial of the nonconforming existing variances *428 was inconsistent with the intent and purpose of the then existing Westfield Master Plan. Approximately two years prior to this application, the Board recommended, and the Town Council approved, a Master Plan where a conforming lot in a RS-8 zone would have a frontage and width of 60 feet and an area of 8,000 square feet. Prior to this change, a lot in the subject neighborhood required a frontage and width of 70 feet and Dinizo could not have had a subdivision without a variance for such deficiency, since the total width of his lot is only 135 feet. It follows that the Town was downsizing its requirements for lots in the neighborhood when it made the subject area an RS-8 zone, where lots only required a 60 foot frontage and width prior to Dinizo's application. Therefore, the granting of a subdivision and bulk variances herein could not have been considered as being contrary to the intent of the zoning ordinance at the time of the application hearing. Both of the proposed subdividable lots were in excess of the requirements of the zoning laws of Westfield at the time of the application. The minor nonconforming variances that were requested existed before and would continue to exist whether the subdivision and variances were granted or not. Dinizo should have been granted the subdivision and related variances when the two resulting lots would conform in terms of area and frontage and width and one lot would be "marginally insufficient" in respect of front yard and side yard requirements. Kaufmann v. Planning Bd. For Warren Tp., 110 N.J. 551, 565, 542 A.2d 457 (1988).
In any event, the Board argues that since the zoning requirements related to Dinizo's lot have significantly changed, this court is obligated to follow the "time of the decision rule," which would reflect the present requirements of the Westfield Zoning Ordinance on the subject property, rather than those in effect at the time of the Board's hearing. Under the present zoning ordinance, Dinizo's lot is now in an RS-12 zone, where any new lot would have to have a frontage and width of at least 70 feet. Therefore, besides other deficiencies as to both proposed lots, a new lot created herein by subdivision would now need a variance, since its lot frontage and width as proposed is 60 feet.
"It is well settled that the zoning ordinance in effect at the time the case is ultimately decided is controlling." Noble v. Chairman and Tp., Comm. of Mendham Tp., 91 N.J.Super. 111, 116, 219 A.2d 335 (App.Div.) (citation omitted) certif. den., 48 N.J. 120, 223 A.2d 497 (1966). The purpose of this principle is to effectuate the current policy declared by the legislative body, herein the Westfield Town Council. Kruvant, supra., 82 N.J. at 440, 414 A.2d 9.
However, there are exceptions to the "time of decision rule." Cox, New Jersey Zoning and Land Use Administration § 28-3.5, (1997). One of these exceptions is where an applicant has certain rights vested by statute. Id. In S.T.C. Corp. v. Planning Bd. of Tp. of Hillsborough, 194 N.J.Super. 333, 476 A.2d 888 (App.Div.1984), it was held that where an applicant had been wrongfully denied site plan approval, a zoning amendment prohibiting the use passed during the pendency of his appeal would not affect his right to the approval, since under the provisions of N.J.S.A. 40:55D-49 the recipient of preliminary site plan approval is protected from zoning amendments barring or restricting the proposed use for three years. Under general equitable principles, an applicant should have the benefit of the statutory protection against zoning amendments which outlaw his wrongly denied relief. "Plaintiff should not forfeit its proposed use because of planning board error." S.T.C.,supra., 194 N.J.Super. at 336, 476 A.2d 888.
In the instant case, Dinizo was wrongly denied his subdivision and bulk variances. If the subdivision application was granted as it should have been, it would have been protected for a two year period of time, just as site plan was protected for three years by statutory vesting in S.T.C., supra. In the instant case, N.J.S.A. 40:55D-47 provides that the zoning requirements and general terms and conditions upon which a minor subdivision approval is granted shall not be changed for a period of two (2) years and Dinizo became vested with this statutory protection *429 when he submitted his conforming application to the Board.
Even if Dinizo did not benefit from statutory vesting, the time has come in zoning cases where the "time of the decision rule" must be reevaluated. An applicant, whether he be a large land developer or, more so, a person building for himself on one lot, should, in fairness, have reasonable expectations regarding how a zoning ordinance will affect his or her development plans. Under the rule as it currently exists, the only reasonable expectation that applicants may have is that the laws which affect their applications may change at virtually any time.[2]
* * *In the context of land development, the rule [time of decision rule] offends common sense, given the extremely expensive and risky nature of the development business and its dependence of market timing. Carl S. Bisgaier & Yvonne Marcuse, [Vesting and the Time of Decision Rule, New Jersey Lawyer Magazine, November/December 1997, at 13, 14.]
Dinizo should have been granted the subdivision and related variances. He should have been able to rely on the zoning ordinance which gave him that right. Common sense and equitable considerations, Cox, supra at § 28-3.5, so dictate.
Therefore, this court concludes that the Board's action in denying the subdivision and variances was arbitrary, capricious and unreasonable and since the "time of decision rule" is not applicable herein, the decision of the Board is reversed. The attorney for Dinizo will prepare the necessary order in accordance with this decision within the next ten days.
NOTES
[1] There is no indication in the record below that this application proceeded under c(2) of N.J.S.A. 40:55D-70, which would have been a viable alternative herein.
[2] The New Jersey Supreme Court has recognized:

[i]f there is any class of litigant that knows of the uncertainties of litigation, it is the builders. They, more than any other group, have walked the rough, uneven, unpredictable path through planning boards, boards of adjustments, permits, approvals, conditions, lawsuits, appeals, affirmances, reversals, and in between all of these, changes in both statutory and decisional law that can turn a case upside down. Hills Development Co. v. Bernards Tp., 103 N.J. 1, 55, 510 A.2d 621 (1986).