G. WAYNE OVERTON, PETITIONER-APPELLEE v. CAMDEN COUNTY AND THE CAMDEN COUNTY BOARD OF ADJUSTMENT, RESPONDENTS-APPELLANTS

No. COA02-275

(Filed 31 December 2002)

## 1. Zoning—judicial review of board of adjustment—standard

The trial court properly applied the de novo standard of review to whether a county board of adjustment applied the correct ordinance and interpreted it properly. Both are questions of law.

## 2. Zoning—successive ordinances—time of enforcement controls

The trial court did not err by applying the zoning ordinance in effect at the time of enforcement (the Unified Development Ordinance) rather than the ordinance in effect at the time of the violation (the Camden County Zoning Ordinance) in a case involving the replacement of an existing mobile home.

## 3. Zoning—successive ordinances—nonconforming use—replacement—conditional use permit required

In an action involving the replacement of a mobile home under one zoning ordinance (the Camden County Zoning Ordinance) and an enforcement action under a subsequent ordinance (the Unified Development Ordinance), the failure of petitioner to obtain a conditional use permit required by the first ordinance disqualified the replacement mobile home as a continuing nonconforming use under the second because that ordinance required a nonconforming use to be otherwise lawful on the effective date of the ordinance. Moreover, petitioner did not obtain a building permit for the replacement, although it is not clear whether the board of adjustment ruled this a violation of the first or the second ordinance.

## 4. Zoning—conditional use permit—timing—conditions

In a case involving the replacement of a mobile home, the initial failure of the board of adjustment to require a conditional use permit does not prevent the subsequent requirement of a permit, and reasonable conditions could be attached. The conditions imposed by the board at an earlier stage of this case would be appropriate if attached to a conditional use permit.

Appeal by respondents from an order entered 25 October 2001 by Judge James R. Vosburgh in Superior Court, Camden County. Heard in the Court of Appeals 16 October 2002.

*Hornthal, Riley, Ellis & Maland, L.L.P., by Donald I. McRee, Jr., for petitioner-appellee.*

*Herbert T. Mullen, Jr. and Shelley T. Eason, for respondents-appellants.*

McGEE, Judge.

G. Wayne Overton (petitioner) is the owner of property located at 1330 South NC 343 in Camden County, North Carolina (the property). Petitioner first placed a mobile home on the property in 1972. Petitioner replaced the original mobile home on the property with another mobile home (replacement mobile home) in 1995 without obtaining a building permit or a conditional use permit from Camden County. The Camden County Code Enforcement Officer (Enforcement Officer) mailed petitioner a certified letter on 18 February 2000 advising petitioner of violations of sections 3.02, 3.05, 7.07(C-4), and 8.06 of the Camden County Zoning Ordinance (CCZO). The CCZO was enacted and effective on 20 December 1993. It was replaced on 1 January 1998, by the Camden County Unified Development Ordinance (UDO). Petitioner appealed the Enforcement Officer's decision to the Camden County Board of Adjustment (Board of Adjustment) on 6 March 2000.

The Board of Adjustment issued a decision on 10 April 2000 finding (1) petitioner in violation of the "adopted ordinance" for failing to secure a building permit before replacing the original mobile home with the replacement mobile home; (2) allowing the replacement mobile home to remain on the site upon petitioner obtaining a building permit and the paying of a fifty dollar fine; and (3) subjecting petitioner to the additional conditions that the replacement mobile home must be removed if vacated for more than sixty days, that the lot must be maintained, that only one person could live in the replacement mobile home, and that the replacement mobile home must have been manufactured after 1 July 1976.

Petitioner filed a petition for a writ of certiorari for review by the Camden County Superior Court on 9 May 2000. He contended that the Board of Adjustment had no authority to impose the additional conditions cited above on its decision to allow the replacement mobile home to remain on the property. The trial court entered an order on

25 October 2001 concluding, *inter alia*, that: (1) the "Board of Adjustment erroneously applied the [CCZO] to Petitioner, the [replacement] mobile home, and the Property where such ordinance had been replaced as of January 1, 1998 by the . . . UDO"; (2) the "Board of Adjustment erroneously failed to apply the . . . UDO"; (3,) "Petitioner's replacement mobile home constituted a 'nonconforming situation' . . . protected under the . . . UDO, and Article 14 of the UDO [did] not require a conditional use permit for Petitioner's continued use of his mobile home as a 'nonconforming situation' "; (4) "[t]he only permit required of Petitioner under the UDO was a building permit"; and (5) the "Board of Adjustment was without authority to impose the [additional] conditions . . . ." The order vacated the Board of Adjustment's decision and remanded the matter to the Board of Adjustment for issuance of a building permit for the replacement mobile home, without the unauthorized conditions, upon payment by petitioner of the required seventy-five dollar fee and fifty dollar fine. Respondents appeal the order.

When a superior court grants certiorari to review the decision of a board of adjustment, "the superior court sits as an appellate court, and not as a trier of facts." *Sun Suites Holdings, LLC v. Board of Alderman of Town of Garner*, 139 N.C. App. 269, 271, 533 S.E.2d 525, 527, *disc. review denied*, 353 N.C. 280, 546 S.E.2d 397 (2000) (quoting *Tate Terrace Realty Investors, Inc. v. Currituck County*, 127 N.C. App. 212, 217, 488 S.E.2d 845, 848, *disc. review denied*, 347 N.C. 409, 496 S.E.2d 394 (1997)). The superior court's review is limited to determinations of whether

> "1) the [b]oard committed any errors in law; 2) the [b]oard followed lawful procedure; 3) the petitioner was afforded appropriate due process; 4) the [b]oard's decision was supported by competent evidence in the whole record; and 5) [whether] the [b]oard's decision was arbitrary and capricious."

*Capital Outdoor, Inc. v. Guilford Cty. Bd. of Adjust.*, 152 N.C. App. 474, 567 S.E.2d 440, 441 (2002) (quoting *Capital Outdoor, Inc. v. Guilford Cty. Bd. of Adjust.*, 146 N.C. App. 388, 390, 552 S.E.2d 265, 267 (2001), *rev'd per curiam on other grounds*, 355 N.C. 269, 559 S.E.2d 547 (2002). If the superior court is reviewing either the sufficiency of the evidence or whether the board's decision was arbitrary and capricious, the superior court applies the "whole record test." *Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjust.*, 140 N.C. App. 99, 102, 535 S.E.2d 415, 417 (2000), *aff'd*, 354 N.C. 298, 554 S.E.2d 634 (2001). Errors of law are reviewed *de novo*. *Id.* An appel-

late court's review of the trial court's zoning board determination is limited to determining whether the superior court applied the correct standard of review, and to determine whether the superior court correctly applied that standard. *Id.* at 102-03, 535 S.E.2d at 417.

[1] We first decide whether the trial court exercised the appropriate scope of review. The issues presented for review at each stage of these proceedings relate to which ordinance to apply and the proper interpretation of that ordinance, both of which present questions of law, requiring a *de novo* review. *Id.* at 103, 535 S.E.2d at 417. The trial court applied the *de novo* standard of review, and therefore, we must determine whether the trial court was correct in its exercise of the *de novo* review. *Id.*

[2] Respondents argue that the trial court erred in applying the UDO to petitioner's zoning violation, instead of the CCZO. Our State's courts have not decided the issue of which zoning ordinance to apply when an alleged violation occurs while one ordinance is in effect, but enforcement is sought only after a new ordinance has replaced the previous ordinance. At the time of the alleged violation, being the replacement of a mobile home by petitioner in 1995, the CCZO was the zoning ordinance in effect. However, when the enforcement action was brought by Camden County, the UDO had superceded the CCZO.

In *Naegele Outdoor Advertising v. Harrelson*, 336 N.C. 66, 442 S.E.2d 32 (1994), our Supreme Court reversed the majority's decision from this Court which had stated that application for permits must be viewed under the facts and laws as they existed at the time of the application, not at the ultimate time of decision by the court. *Naegele*, 112 N.C. App. 98, 101-02, 434 S.E.2d 244, 246 (1993), *rev'd per curiam*, 336 N.C. 66, 442 S.E.2d 32 (1994). The Supreme Court reversed this Court's decision for the reasons stated in the dissenting opinion by Judge Greene. 336 N.C. at 66, 442 S.E.2d at 33. Judge Greene's dissent "disagree[d] with the majority's conclusion that [the petitioner's] application must be viewed at the time it was made, without regard to the fact that the Department of Transportation had a subsequent statutory obligation to screen the junkyard." 112 N.C. App. at 102, 434 S.E.2d at 247 (Greene, J., dissenting). *Naegele* rejects the proposition that a court or board need not look at subsequent changes in the law when Board of Adjustment decisions are made.

Courts in other jurisdictions have addressed similar questions. " 'It is well settled that the zoning ordinance in effect at the time the

case is ultimately decided is controlling' . . . . The purpose of this principle is to effectuate the current policy declared by the legislative body." *Dinizo v. Planning Board of the Town of Westfield,* 711 A.2d 425, 428 (N.J. Super. 1998) (citations omitted); *see also MacDonald Advertising Co. v. McIntyre,* 536 N.W.2d 249, 251 (Mich. Ct. App. 1995) ("[T]he general rule is that the law to be applied is that which was in effect at the time of the decision.") (citation omitted); *Enviro-Gro Technologies v. Bockelmann,* 594 A.2d 1190, 1198 (Md. Ct. Spec. App.), *cert. denied,* 599 A.2d 447 (Md. 1991); *Shiloh Gospel Chapel, Inc. v. Roer,* 566 N.Y.S.2d 382, 382 (N.Y. App. Div. 1991) ("[I]t is well-settled that a court will apply the zoning ordinance in existence at the time of its decision.") (citations omitted). "The majority rule . . . is that the zoning law or regulation in effect at the time of the decision of a court is controlling as opposed to that in effect when the pro-ceedings were instituted or when the administrative agency entered its decision upon the application." *McCallum v. Inland Wetlands Com'n of Avon,* 492 A.2d 508 (Conn. 1985) (citing 4 Anderson, *American Law of Zoning* § 25.31), *superceded by statute as stated in McNally v. Zoning Com'n of City of Norwalk,* 621 A.2d 279, 282-83 (Conn. 1993) (noting that a statute specifically changed the common law rule as stated above in Connecticut). Respondents have not directed us to any statute that would prevent the application of such a rule in North Carolina.

Other jurisdictions have recognized exceptions to this "time of decision rule." *Dinizo,* 711 A.2d at 428 (citation omitted) (noting the vested right exception and calling for a reevaluation of the "time of decision" rule); *MacDonald Advertising Co.,* 536 N.W.2d at 252 (not-ing a bad faith exception but finding insufficient evidence to apply the exception); *Shiloh Gospel Chapel, Inc.,* 566 N.Y.S.2d at 383 (noting a "special facts exception" pursuant to which a former ordinance might still be deemed controlling if there is evidence of bad faith, conspir-acy, or undue delay by the board). However, in the case before us there is no evidence that any such circumstances were present to warrant the use of such an exception by this Court.

The New York courts have held that a later act, which covers the entire subject of the earlier act and is clearly intended to set forth exclusive rules, operates as a repeal of an earlier act, wiping it out for all purposes and preventing enforcement thereunder. *See Fleetwood v. Manor, Inc. v. Village of Huntington Bay,* 115 N.Y.S.2d 615 , 618-19 (N.Y. Sup. Ct. 1952); *Inzerilli v. Pitney,* 30 N.Y.S.2d 129, 131-32 (N.Y. Sup. Ct. 1941). However, other states' courts have held if

there is a savings clause in the amending ordinance, the enforcement may continue. *See Town of Ogunquit v. McGarva*, 570 A.2d 320, 321 (Me. 1990); *City of New Orleans v. Leeco, Inc.*, 76 So.2d 387, 390 (La. 1954); *City of Rochester v. Crittenden Park Riding Academy*, 238 N.Y.S. 215, 215 (N.Y. Sup. Ct. 1930).

In light of Judge Greene's opinion in *Naegele*, 112 N.C. App. at 102, 434 S.E.2d at 247 (Greene, J., dissenting), and the rules applied in other types of cases involving decisions by boards of adjustment from other jurisdictions, we hold that the zoning ordinance in effect at the time of the Board of Adjustment's decision is the correct ordinance to apply. The Board of Adjustment should have applied the UDO in the present case and the trial court did not err in applying the UDO.

[3] Respondents next argue that even if the UDO governs the case before us, the trial court erred by finding that the replacement mobile home constituted a nonconforming use under the UDO. Section 1402.1 of the UDO provides that "non-conforming situations that were otherwise lawful on the effective date of this ordinance may be continued." Therefore, the issue is whether the replacement mobile home was a nonconforming use that was otherwise lawful at the effective date of the UDO, which was 1 January 1998. If so, the replacement mobile home could continue as a nonconforming use under the UDO; if not, the replacement mobile home would be subject to section 1210 of the UDO, requiring a conditional use permit.

Respondent argues that the replacement mobile home was neither a nonconforming use, nor was it "otherwise lawful," at the effective date of the UDO. The definition of a nonconforming situation under the UDO is "a situation that occurs when, on the effective date of this Ordinance, an existing lot or structure or use of an existing lot or structure does not conform to one or more of the regulations applicable to the district in which the lot or structure is located." Under the language of the UDO, the replacement mobile home comes within the definition of a nonconforming situation in that it was in place at the effective date of the UDO and did not conform to the regulations applicable to the district in which it was located.

However, a nonconforming use under the UDO can continue only if it was "otherwise lawful on the effective date of the ordinance." Although the Board of Adjustment and the trial court must apply the UDO, the language in sections 107 and 1402 of the UDO mandates that we look at the previous laws and ordinances affecting the property in question to determine whether the nonconforming use under the

UDO was "otherwise lawful" on the UDO's effective date. *See Town of Ogunquit*, 570 A.2d at 321; *City of New Orleans*, 76 So.2d 387 (La. 1954); *City of Rochester*, 238 N.Y.S. at 215. In the case before us, we must therefore reference the CCZO to determine whether the replacement mobile home was "otherwise lawful." If the replacement mobile home violated the terms of the CCZO, it would not be "otherwise lawful" as required by the UDO.

Section 107 of the UDO states that "[i]n particular, a situation that did not constitute a lawful nonconforming situation under the previously adopted Zoning Ordinance does not achieve lawful nonconforming status under [the UDO] merely by repeal of the [CCZO]." In fact, Camden County has previously evinced such a desire to interpret their zoning ordinances to encompass violations of previous ordinances in their new zoning ordinances. In section 1.04 of the CCZO, the ordinance states that "[i]n addition, no land being used in violation of the old Zoning Ordinance shall obtain status as an allowed non-conforming use by virtue of the enactment of this new Zoning Ordinance, but all land in violation of the old Zoning Ordinance shall continue to be in violation of the [CCZO]."

The replacement mobile home was not "otherwise lawful" on the effective date of the UDO. Petitioner originally had a nonconforming manufactured home on the property under the CCZO. However, when he replaced the mobile home in 1995, section 5.02(F) of the CCZO required petitioner to obtain a conditional use permit pursuant to section 8.04 of the CCZO. Petitioner failed to apply at any time for a conditional use permit for the replacement mobile home and was therefore in violation of the CCZO when the UDO was adopted.

In addition, petitioner did not obtain a building permit when he moved the original mobile home off of the property and replaced it. The Board of Adjustment found this to be a violation of the "adopted zoning ordinance." There was no disagreement from petitioner that he needed a building permit to replace the original mobile home on the property, as evidenced by his willingness to pay the fine, obtain the building permit, and thereafter continue with the use of the replacement mobile home.

However, it is not clear whether the Board of Adjustment ruled this failure a violation of the CCZO or the UDO. If it was simply a violation of the UDO's provision on building permits, section 1703, such a violation standing alone would not authorize the imposition of a conditional use permit and the applications of conditions to peti-

tioner's use of the property. However, if the failure to obtain a building permit was a violation of the CCZO, then this would fall under the "otherwise lawful" limitation in section 1402.1 of the UDO, disqualifying the replacement mobile home from remaining as a continuing nonconforming use under the UDO. However, the record does not contain the complete version of the CCZO, and it is unclear what section required petitioner to obtain a building permit to replace the mobile home on the property. While it may be the case that the CCZO required a building permit, the Board of Adjustment's assertion that the replacement mobile home required a building permit, when unsupported by the record cannot stand. Nevertheless, the failure of petitioner to obtain a conditional use permit as required under the CCZO, disqualifies the replacement mobile home as a continuing nonconforming use under section 1401.1 of the UDO.

[4] The proper application of the UDO requires petitioner to seek a conditional use permit for the mobile home on his property. The failure of the Board of Adjustment to do so at the first hearing does not prevent such a requirement at this stage. *City of Winston-Salem v. Concrete Co.*, 47 N.C. App. 405, 414, 267 S.E.2d 569, 575, *disc. review denied*, 301 N.C. 234, 283 S.E.2d 131 (1980) ("A city cannot be estopped to enforce a zoning ordinance against a violator due to the conduct of a zoning official in encouraging or permitting the violation."). While the Board of Adjustment could not attach conditions to the replacement mobile home if it continued as a nonconforming use, when issuing a conditional use permit, the Board of Adjustment can attach reasonable conditions. A board of adjustment "may impose reasonable and appropriate conditions and safeguards upon [conditional use] permits." N.C. Gen. Stat. § 153A-340(c) (2001).

A reviewing court will normally defer to a board of adjustment so long as a condition is reasonably related to the proposed use, does not conflict with the zoning ordinance, and furthers a legitimate objective of the zoning ordinance. *See Chambers v. Board of Adjustment*, 250 N.C. 194, 195, 108 S.E.2d 211, 213 (1959) (noting that Boards of Adjustment cannot waive requirements under a zoning ordinance); *Bernstein v. Board of App., Village of Matinecock*, 302 N.Y.S.2d 141, 146 (N.Y. Sup. Ct. 1969) ("The conditions imposed cannot go beyond the ordinance, which is the source of the Board's power, [t]hey must be directly related to and incidental to the proposed use of the property, and the conditions stated must be sufficiently clear and definite that the permittee and his neighbors are not left in doubt concerning the extent of the use permitted.")

(citations omitted) (cited in *Godfrey v. Zoning Bd. of Adjustment of Union County*, 317 N.C. 51, 344 S.E.2d 272 (1986)); *see also* 3 A. Rathkopf & D. Rathkopf, *The Law of Zoning and Planning* § 61.49 (Supp. 2001). Section 1915 of the UDO allows the Board of Adjustment to impose

> such reasonable requirements in addition to those specified in this Ordinance as will ensure that the development in its proposed location: (a) will not endanger public safety; (b) will not endanger the value of adjoining or abutting property; (c) will be in harmony with the area in which it is located; (d) will be in conformity with the land use plan . . . or other plan officially adopted by the Board; and (e) will not exceed the county's ability to provide adequate public facilities . . . .

In this case, the Board of Adjustment imposed several conditions on petitioner's use of the replacement mobile home: (1) that the replacement mobile home satisfy inspection that it is "up to code"; (2) that one individual inhabit the replacement mobile home at all times; (3) that the replacement mobile home not be vacated for more than thirty days, with thirty additional days to find a new resident, for a total of sixty days; (4) that the lot be kept in condition with the standards for that area; and (5) that the replacement mobile home be built after July 1, 1976. After reviewing the UDO and the above conditions, we see no reason to strike any of the conditions as unreasonable or inappropriate. *See* N.C.G.S. § 153A-340(c). These conditions are not in contravention of the UDO, and in fact would further the purposes of the UDO as emphasized in section 1915. Further, all of these conditions relate in some way to the use of the property. We find the imposition of such conditions by the Board of Adjustment appropriate, if attached to a conditional use permit. The decision of the trial court is vacated and this matter is remanded to the trial court for remand to the Camden County Board of Adjustment for further proceedings consistent with this opinion, including the issuance of a conditional use permit to petitioner for the replacement mobile home with any reasonable conditions attached to the conditional use permit.

Vacated and remanded.

Judges HUDSON and BIGGS concur.