CRLP DURHAM, LP, PETITIONER v. DURHAM CITY/COUNTY BOARD OF ADJUST-MENT, AND ELLIS ROAD, LLC, RESPONDENT

No. COA10-120

(Filed 1 March 2011)

**Appeal and Error— record—applicable law—prior and subsequent zoning ordinances**

An appeal from a zoning decision was dismissed where the record did not permit determination of whether a prior or a subsequent zoning ordinance was applicable to the development plans in question.

Appeal by petitioner from decision and order entered on or about 19 August 2009 by Judge Orlando F. Hudson in Superior Court, Durham County. Heard in the Court of Appeals 9 June 2010.

*Manning Fulton & Skinner P.A. by William C. Smith, Jr. and Katherine M. Bulfer, for petitioner-appellant.*

*City of Durham by Deputy City Attorney Karen Sindelar, for respondent-appellee Durham City/County Board of Adjustment.*

*Zaytoun Law Firm, PLLC, by Robert E. Zaytoun, for petitioner-appellee Ellis Road, LLC.*[1]

STROUD, Judge.

CRLP Durham, LP, ("petitioner") appeals from a trial court's order in favor of Durham City/County Board of Adjustment and Ellis Road, LLC ("respondents"). For the following reasons, we dismiss petitioner's appeal.

## I. Background

Respondent Ellis Road, LLC is the owner of a 42.76 acre parcel located on Ellis Road in Durham County and petitioner is the owner of an adjoining 28.21 acre parcel of property. On 27 November 2007, respondent Ellis Road, LLC, filed a site plan with the Durham City-County Planning Department ("the Planning Department") seeking to construct "344 apartment units with associated infrastructure improvement" on the 42.76 acre parcel and for the use of a cross-access connection between its property and the adjoining property owned by petitioner. As part of the evaluation of the submitted site plan, the Planning Department reviewed the submitted site plan to determine if it conformed with the existing development plan for that parcel of property. The Planning Department contacted the developer, as part of the site plan review, and informed him that pursuant to the existing development plan, use of the cross-access connection between respondent Ellis Road, LLC's property and the adjoining property owned by petitioner would be required. The developer contacted petitioner, and, in a letter to the Planning Department, petitioner "raised several concerns including the legality of the proposed use and the status of the cross-access connection."

On 29 September 2008, the Planning Department issued a decision stating that "the cross-access connection [was] . . . a required element of the development plan" and the development plan indicated that this cross-access connection "between properties . . . provided for free access without any limitations." The decision further stated that petitioner must allow for respondent Ellis Road, LLC to utilize this cross-access connection to cross petitioner's property without restrictions. Petitioner appealed the Planning Department's decision

---

1. Petitioner Ellis Road, LLC's brief on appeal "incorpote[d] by reference, the brief filed by Respondent-Appellee Durham City/County Board of Adjustment, including the Statement of Additional Facts and all arguments and authorities presented by Respondent-Appellee Durham City/County Board of Adjustment."

to the Durham City/County Board of Adjustment ("the Board"), arguing that the Planning Department erred in its decision because a conditional cross-access agreement limited the use of the cross-access connection to office use only and allowing its use for residential apartments violated that agreement. The Board held a hearing on this matter on 5 March 2009. Evidence presented at this hearing tended to show that the subject properties owned by petitioner and respondent Ellis Road, LLC were both originally part of a 70.97 acre tract of land which was partitioned and rezoned by an approved development plan on 7 February 2000, as a 28.21 acre parcel zoned for "Multi-Family RM-16(D)" ("petitioner's parcel") and a 42.76 acre parcel zoned for "Office OI-2(D)" ("respondent's parcel"), respectively. The approved development plan included a cross-access connection between the tracts, which allowed traffic going to and from respondent's parcel to access Ellis Road by crossing a portion of petitioner's parcel. The development plan also included design plans for an apartment complex on petitioner's parcel; respondent's parcel was labeled "Office Development[,]" but did not include design plans for any development, noting at the bottom of the development plan that "with the development of the office parcel a northbound right turn lane on Ellis Road will be constructed for the proposed access." The development plan also noted that "[a]t the time of subdivision and/or recombination plat approval a shared access agreement for the northern multi-family/office shared access driveway will be recorded." On or about 20 December 2000, an "Access Agreement" was filed with the Durham County Register of Deeds limiting the cross-access connection to office use only. Petitioner purchased the 28.21 acre parcel on 28 July 2005 after an apartment complex had been constructed. The 42.76 acre tract remained vacant until respondent purchased the property and filed the above-noted site plan on 27 November 2007 seeking to construct residential housing. At the hearing, Durham City/County Planning Director Steven Medlin testified that "under the zoning rules, development plans are schematic, which means that any use that is permissible in the OI-2 zone is actually permissible as long as you can meet the minimum design criteria that is established within the development plan[;]" the language regarding "office use" on the OI-2 portion of the 2000 development plan was merely suggestive of a potential use of the property but not a binding, committed element of the development plan; there were "no limitations imposed by either the development plan or the site plan of record for this project that limit[ed] the types of uses that can gain access" to respondent's parcel via the cross-access connection; the zoning ordinances

allowed for several uses for properties zoned OI-2, including office or multiplex/apartment; respondent's tract was zoned OI-2, and the access agreement limited the uses of the cross-access connection to office use only, which was more restrictive than that which was allowed by the zoning ordinances; restricting the cross-access connection to only residential uses in the "Access Agreement" amounted to "a significant change in location or configuration of [an] access point . . . that is considered to be a major deviation from the development plan" requiring the Board's approval before it was filed; and, as the "Access Agreement" did not receive prior approval by the Board, it was "not[] compliant with the approved development plan." Petitioner argued that the language on the development plan allowed for the access agreement; the conditional access agreement was consistent with the office restrictions in the development plan; petitioner bargained for and relied on this conditional access agreement when it purchased the subject properties; and the applicable zoning laws could not "trump" a private easement agreement.

Following the hearing on this matter, the Board, by order dated 29 April 2009, denied petitioner's appeal, voting unanimously to uphold the planning department's decision that the limitation of the cross-access agreement to office use only was a restriction not permitted by the development plan or site plan and was therefore, in violation of the zoning ordinance. On 11 May 2009, petitioner filed a petition for writ of certiorari with the superior court for review of the Board's decision. The superior court granted petitioner's writ of certiorari on 11 May 2009. On 29 May 2009, petitioner filed an "Amended Petition for Writ of Certiorari" which was identical to the first petition except it included a verification from a representative of petitioner, and this amendment was acknowledged and allowed by the superior court on 4 June 2009. Respondent Ellis Road, LLC, was allowed to intervene in the proceedings by order dated 18 August 2009. Following a 13 August 2009 hearing, the superior court, by order entered 20 August 2009, denied petitioner's request to reverse the Board's interpretation of the development plan and the zoning code and affirmed the decision of the Board. On 18 September 2009, petitioner filed notice of appeal from the superior court's order.

## II. Standard of Review

We have stated that "[j]udicial review of the decisions of a municipal board of adjustment is authorized by N.C. Gen. Stat. § 160A-388(e2), which provides, in pertinent part, that '[e]very decision

of the board shall be subject to review by the superior court by proceedings in the nature of *certiorari.*' " *Four Seasons Mgmt. Servs. v. Town of Wrightsville Beach*, —— N.C. App. ——, ——, 695 S.E.2d 456, 462 (2010). A superior court's review of a decision by the board of adjustment is limited to:

> (1) review the record for errors of law; (2) ensure that procedures specified by law in both statute and ordinance are followed; (3) ensure that appropriate due process rights of the petitioner are protected, including the right to offer evidence, cross-examine witnesses, and inspect documents; (4) ensure that the decision is supported by competent, material, and substantial evidence in the whole record; and (5) ensure that the decision is not arbitrary and capricious.

*Wright v. Town of Matthews*, 177 N.C. App. 1, 8, 627 S.E.2d 650, 656 (2006) (citation and quotation marks omitted). In review of a trial court's order, "[i]f a petitioner contends the Board's decision was based on an error of law, *de novo* review is proper. However, if the petitioner contends the Board's decision was not supported by the evidence or was arbitrary and capricious, then the reviewing court must apply the whole record test." *Four Seasons*, —— N.C. App. at ——, 695 S.E.2d at 462 (citation and quotation marks omitted). "When this Court reviews a superior court's order which reviewed a zoning board's decision, we examine the order to: (1) determin[e] whether the [superior] court exercised the appropriate scope of review and, if appropriate, (2) decid[e] whether the court did so properly." *Cook v. Union County Zoning Bd. of Adjustment*, 185 N.C. App. 582, 587, 649 S.E.2d 458, 464 (2007) (citation, brackets, and quotation marks omitted).

### III. Petitioner's appeal

Petitioner brings forth four arguments on appeal arguing that the superior court erred in upholding the Board's decision because: (1) the Board's interpretation of the development plan for the subject property was based upon an error of law; (2) the Board's decision was arbitrary and capricious as finding No. 4 "amounts to a license to make arbitrary change to a Development Plan or Zoning Ordinance whenever the Planning Director desires[;]" (3) "the Board's interpretation of the applicable municipal ordinances was affected by error of law[;]" and (4) "the Board misapplied or otherwise ignored controlling North Carolina law, leading to the erroneous conclusion that petitioner is required to provide unrestricted cross access to the adjoining tract."

Before we can address the substantive issues raised by petitioner, several of which involve the argument that the Board based its decision upon an error of law, we must first ascertain the applicable law, which in this instance would be the zoning ordinances. The record before us raises questions as to the "applicable municipal ordinances[.]" Planning Director Steven Medlin testified that the development plan in question was approved in 2000 under the Merged Zoning Ordinance ("MZO") but the MZO was "subsequently supplanted" in 2006 by the "Unified Development Ordinance" ("UDO"). However, Mr. Medlin testified as to the application of both the MZO and UDO to the 2000 development plan, noting that "[t]he development plan . . . was evaluated back in 2000 and found to be compliant with the Merged Zoning Ordinance standards." Consequently, the Board's" ruling noted the applicability of both the MZO and UDO in its findings:

> 2. Zoning for the Original Tract was approved by the Durham City Council on February 7, 2000, in case P99-30. That tract included a portion zoned RM-16(D), a multifamily district, on the south side ("southern tract") and a portion zoned OI-2(D), an office district, on the north side ("northern tract.") These designations were those that existed under the Merged Zoning Ordinance in effect at the time. The designations were subsequently changed to RS-M(D) and OI(D), respectively, upon the effective date of the successor to the Merged Zoning Ordinance, the Unified Development Ordinance ("UDO"), which was adopted on January 1, 2006. The uses allowed under the former ordinance and the UDO for the property were substantially the same.

> 3. In addition to establishing the base zoning districts for the Original Tract, described above, the February 2000 zoning of the Original Tract included a "development plan."

> 4. Under both the former Merged Zoning Ordinance and the current UDO (Section 3.5.1.C), a development plan establishes certain parameters that control the future physical development of a property. Both ordinances establish that some of these parameters cannot be changed without governing body approval of a rezoning. Other descriptions on the development are considered conceptual and not binding.

> 5. Under both ordinances, site plans to develop a property subject to a development plan rezoning must be in accord with the portions of the approved development plan considered binding.
> . . . .

10. The prior Merged Zoning Ordinance and the current UDO allow many uses in office districts such as OI-2 and OI districts. Those uses include multifamily housing and apartments, among others.

21. Change to approved access points on a development plan is a significant change and requires a zoning map change. This ordinance requirement is found in Section 3.5.12A.9 of the UDO, and similar requirements existed in Section 15.3.6 of the Merged Zoning Ordinance, the ordinance in effect at the time the development plan was approved . . . .

Although the findings based on Mr. Medlin's testimony note that the UDO was "adopted" in 2006, there is no finding regarding the extent of the UDO's applicability to development plans approved in 2000 under the MZO; this is because there was no evidence presented at the hearing regarding whether the UDO completely "supplanted" the MZO or if the MZO was still applicable to development plans approved in 2000. However, the Board based its holding solely on the application of the UDO to the facts before them, presumably because it assumed or could determine based upon the ordinances that the UDO completely "supplanted" the MZO in 2006. Likewise, in its conclusion, the superior court pointed to the UDO as the applicable ordinance stating that: "The Board's conclusion that Petitioner violates the Durham zoning code, Durham's 'Unified Development Ordinance', by not providing such unrestricted, unconditional cross-access is not affected by error of law." We further note that on appeal, petitioner in its third argument regarding the Board's interpretation of the applicable municipal ordinances argues that the Merged Zoning Ordinance ("MZO") was the applicable ordinance but in the alternative also contends that the current Durham zoning ordinance, the Unified Development Ordinance ("UDO"), is substantially the same and would lead to the same result as to the facts before us. In a footnote, petitioner argues that, "While Petitioner believes the MZO governs whether Petitioner's predecessor-in-interest was required to obtain rezoning approval for the Access Agreement to have effect, the result under both the MZO and the UDO is the same." Yet we are unable to determine the accuracy of petitioner's declaration that "the result under both the MZO and the UDO" would be the same without having both sets of ordinances in the record.

In *Overton v. Camden County*, 155 N.C. App. 391, 574 S.E.2d 157 (2002), this Court addressed the specific issue of "which zoning

ordinance to apply when an alleged violation occurs while one ordinance is in effect, but enforcement is sought only after a new ordinance has replaced the previous ordinance" and held that "the zoning ordinance in effect at the time of the Board of Adjustment's decision is the correct ordinance to apply." *Id.* at 394, 396, 574 S.E.2d at 160, 161. In *Overton*, the petitioner had placed a mobile home on his property in 1972 and replaced that mobile home with another mobile home in 1995, without obtaining a building permit or conditional use permit. *Id.* at 392, 574 S.E.2d at 159. The county had enacted and adopted the Camden County Zoning Ordinance ("CCZO") on 20 December 1993; the CCZO was replaced on 1 January 1998, by the Camden County Unified Development Ordinance ("UDO"). *Id.* On 18 February 2000, the petitioner received a letter from a Camden County Code Enforcement Officer stating that he had violated portions of the CCZO by replacing the mobile home. *Id.* The petitioner appealed this decision to the board of adjustment and the board issued a decision stating that the replacement of the mobile home was a violation of the CCZO; the petitioner was required to obtain a building permit; and the petitioner was to abide by specific conditions for the replacement mobile home to remain on the petitioner's land. *Id.* The petitioner appealed this decision to the superior court and the court, in reversing and remanding the board's decision, held that the board erroneously applied the CCZO "where such ordinance had been replaced as of January 1, 1998 by the . . . UDO[;]" the board erred in ordering the "unauthorized conditions[;]" and the UDO only required petitioner to obtain a building permit for the replacement mobile home. *Id.* at 392-93, 574 S.E.2d at 159. The county appealed to this Court, arguing that "the trial court erred in applying the UDO to petitioner's zoning violation, instead of the CCZO." *Id.* at 394, 574 S.E.2d at 160. This Court noted that "[a]t the time of the alleged violation, being the replacement of a mobile home by petitioner in 1995, the CCZO was the zoning ordinance in effect[,]" but "when the enforcement action was brought by Camden County, the UDO had superseded the CCZO." *Id.* This Court noted that Judge Greene in his dissenting opinion in *Naegele Outdoor Advertising v. Harrelson*, 112 N.C. App. 98, 101-02, 434 S.E.2d 244, 246 (Greene, J., dissenting), *rev'd per curiam*, 336 N.C. 66, 442 S.E.2d 32 (1994), had "reject[ed] the proposition that a court or board need not look at subsequent changes in the law when Board of Adjustment decisions are made." *Id.* After reviewing similar decisions from other jurisdictions, this Court held that because "the zoning ordinance in effect at the time of the Board of Adjustment's decision is the correct ordinance to

apply[,] . . . [t]he Board of Adjustment should have applied the UDO in the present case and the trial court did not err in applying the UDO." *Id.* at 395-96, 574 S.E.2d at 160-61. Thus, the decision in *Overton* rested upon the fact that a "new ordinance ha[d] replaced the previous ordinance[.]" *Id.* at 394, 574 S.E.2d at 161.

Contrary to *Overton*, from the record before us we cannot determine which "zoning ordinance [was] in effect at the time of the Board of Adjustment's decision[.]" *See id.* at 396, 574 S.E.2d at 161. This Court in *Overton* specifically noted that the CCZO was enacted in 20 December 1993 and was "replaced" on 1 January 1998 by the UDO. *Id.* at 394, 574 S.E.2d at 161. Although the record on appeal contains several substantive portions of the UDO, it does not contain any portion of the UDO that includes language stating when or if the UDO "superseded" or "replaced" the MZO or detailing the extent of the UDO's application to development plans approved under the MZO in 2000. Therefore, we cannot say that the UDO, as the "new ordinance" had "replaced the previous ordinance[,]" the MZO, *see id.*, and therefore, the rule in *Overton* is inapplicable.

All of petitioner's arguments on appeal would require the application of the correct Durham City/County zoning ordinances to determine whether the Board properly interpreted the development plan or the zoning ordinances; whether the findings involved arbitrary and capricious interpretations of the zoning ordinances; or how the applicable zoning ordinances relate to North Carolina law. Here, without language from the UDO stating when and if it replaced the MZO, the MZO could be the applicable zoning law for the 2000 development plan as it was approved under that ordinance. If the UDO did fully supplant the MZO, then, according to *Overton*, the UDO would be the applicable ordinance for the interpretation of the development plan approved under the MZO and the issues regarding the cross-access connection between the petitioner's and respondent's properties. We note that there are eleven pages of ordinance provisions included in the record on appeal dated "January 31, 2003[,]" which would indicate that these pages could be portions of the MZO as it existed prior to 2006, but these pages are labeled in the record index as "Unified Development Ordinance Section 15" which was not adopted until 2006. Without the applicable provisions of the MZO to compare to the UDO, we cannot determine that there was no relevant change in the ordinances, such that the result would be the same under either ordinance. We note that there may be portions of the UDO not included in the record on appeal which state specifically when and if

the UDO "superseded" the MZO or explaining the UDO's applicability to development plans approved in 2000 under the MZO. The planning director, Mr. Medlin did testify that the MZO was "subsequently supplanted" in 2006 by the UDO. However, our Courts have consistently held that we "will not take judicial notice of a municipal ordinance." *High Point Surplus Co. v. Pleasants*, 263 N.C. 587, 591, 139 S.E.2d 892, 895 (1965); *See Fulghum v. Selma*, 238 N.C. 100, 105, 76 S.E.2d 368, 371 (1953) ("We cannot take judicial notice of municipal ordinances."). "Appellate review is based 'solely upon the record on appeal,' N.C.R. App. P. 9(a); it is the duty of the appellants to see that the record is complete." *Collins v. Talley*, 146 N.C. App. 600, 603, 553 S.E.2d 101, 102 (2001) (citation omitted). More specifically, N.C.R. App. P. 9(a)(2)(e) states that, "[t]he record on appeal in cases of appeal from judgments of the superior court rendered upon review of the proceedings from administrative boards or agencies, . . . shall contain: . . . . copies of all items properly before the superior court as are necessary for an understanding of all errors assigned[.]"

From the record before us, we cannot, without engaging in speculation, determine whether the MZO or the UDO is the "applicable municipal ordinance" as petitioner failed to include in the record on appeal any portion of the UDO containing language stating when or if the UDO "superseded" the MZO or language from the UDO explaining its applicability to development plans approved under the MZO. As the record before us does not permit a proper examination of the issues before us, we must dismiss petitioner's appeal.

DISMISSED.

Judges McGEE and ERVIN concur.