CITY OF WINSTON-SALEM, PLAINTIFF, AND CHARLIE BROWN, CATHER-
INE BROWN, ALBERT PALMER, GLADYS PALMER, VASHTI McNEAL,
AND THE NEIGHBORHOOD COUNCIL OF PINEY GROVE COMMUNITY,
INTERVENORS, v. HOOTS CONCRETE COMPANY INC., DEFENDANT

No. 7921SC1198

(Filed 1 July 1980)

1. **Municipal Corporations § 30.11– permitted use under zoning ordinance – question of law**

    The determination of whether a specific use of a piece of property conforms to the zoning ordinance is a question of law, and as such, the determination is made by the local zoning board and is reviewable by the courts as a matter of law.

2. **Municpal Corporations § 30.11– property used for concrete mixing facility – prior approval – burden of proof on defendant**

    In an action to enjoin the operation of a ready mix concrete batching plant on the ground that such use was not permitted under the city zoning ordinance, the trial court properly placed the burden on defendant of proving that the city had made a determination six years before the action was brought that the operation was permissible and did not violate the zoning ordinance, since this was an affirmative defense to plaintiff's claim that the operation was in violation of the zoning ordinance, and defendant has the burden of establishing all affirmative defenses.

3. **Municipal Corporations § 30.11– use of property for concrete mixing facility – purpose for which action brought – estoppel of city – erroneous instructions**

    In an action to enjoin the operation of a ready mix concrete batching plant on the ground that such use was not permitted under the city zoning ordinance, the trial court's erroneous instruction that the purpose of the case was to determine whether the city was entitled to enforce a zoning ordinance followed by a statement that the city could not be estopped from enforcing the ordinance by the action of its officers was prejudicial to defendant.

City of Winston-Salem v. Concrete Co.

4. **Municipal Corporations § 30.11– use of property for concrete mixing facility – approval by zoning officer at issue – evidence improperly excluded**

   In an action to enjoin the operation of a ready mix concrete batching plant where defendant alleged that a zoning officer approved the use of the property for such a facility in 1970 but a contrary determination was made in 1976, the trial court erred in excluding (1) evidence concerning the procedure for making a determination when the use applied for was not specifically listed in the ordinance, since such evidence would have been relevant to show how the zoning officer would have acted when application was made by defendant in 1970; (2) evidence concerning similar uses, since the relative similarity of quarry operations in the same zone was relevant to the consideration of whether the zoning official with the power to do so made a determination in 1970 contrary to the determination made in 1976; and (3) evidence that machinery installed on the site in question cost $94,650 and that defendant's total investment in the site was approximately $200,000, since it was relevant evidence that defendant had a determination in 1970 of zoning compliance because the jury might have considered that defendant would not have made the expenditure without it.

APPEAL by defendant from *Hairston, Judge.* Judgment entered 5 September 1979 in Superior Court, FORSYTH County. Heard in the Court of Appeals 22 May 1980.

Plaintiff instituted this civil action on 12 November 1976 to enjoin permanently defendant from using certain real estate for the operation of a ready mix concrete batching plant on the ground that such use was not permitted under the Winston-Salem Zoning Ordinance through which the property in the area in question was zoned I-2, a designation for limited industrial use. The complaint alleged defendant was notified on 2 August 1976 that such a determination of unlawful use of the property had been made and that it must cease the use. Defendant admitted it had been notified in August 1976 that the use was unlawful and that it was continuing to operate the concrete mixing operation on the site. Defendant denied that a concrete mixing plant was an unlawful use in an I-2 district. Defendant in its answer alleged that plaintiff through its zoning officer approved the use of the property for a concrete mixing facility in August 1970. Defendant further alleged that even if the operation did violate the zoning ordinance, plaintiff was estopped to assert the ordinance due to its delay in asserting the ordinance and defendant's detrimental reliance on the August 1970 determination.

City of Winston-Salem v. Concrete Co.

Plaintiff filed for summary judgment which was granted by the trial court on 9 May 1977. On appeal to this Court, the entry of summary judgment was reversed. *City of Winston-Salem v. Hoots Concrete Co.*, 37 N.C. App. 186, 245 S.E. 2d 536, *cert. den.*, 295 N.C. 645, 248 S.E. 2d 249 (1978). The Court there outlined the governing provisions of plaintiff's zoning ordinance which were at issue in the case. Subsection G of Section 29-6, Article I, Chapter 29 of the Winston-Salem City Code provides a "Table of Permitted Uses." The table contains three types of industrial districts, to wit: I-1 (Central Limited Industrial District), I-2 (Limited Industrial District) and I-3 (General Industrial District). A concrete mixing operation was not specifically described in any of the three zones. Among the I-2 zoned uses specified were wholesale storage services, storage yards, quarries or other extractive industries and certain fabrication or assembly operations. This Court stated the following in reversing the summary judgment for plaintiff.

> We will not enter into a discussion of the varied definitions of some of the words used in describing the permitted uses. Suffice it to say that we are unable to say as a matter of law that defendant's concrete mixing operation is more similar to the permitted uses urged by defendant, or to the permitted use urged by plaintiff. Therefore a triable issue of fact remains as to whether plaintiff's zoning officer approved defendant's concrete mixing operation as a permitted use under I-2. If not, the city cannot be estopped to enforce its zoning ordinance under an appropriate interpretation of the ordinance. If so, the question of estoppel does not arise because the zoning officer, acting under authority of the ordinance, made a reasonable, justifiable and lawful determination as to the classification of the use. Assuming the latter, if the city wishes to amend its ordinance to provide that a concrete mixing operation is a permitted use only under I-1 and/or I-3, then defendant's operation will be a non-conforming use which cannot, under the present circumstances, be enjoined.

37 N.C. App. at 189-90, 245 S.E. 2d at 538.

On remand the case was tried before a jury with the issue

being, as stated in *Hoots*,       whether plaintiff's zoning officers determined in 1970 that defendant could operate the concrete mixing plant in an I-2 zone. The following evidence was introduced at trial.

The property in question has been zoned I-2 (limited industrial) under the Winston-Salem Zoning Ordinance since 1968. The Zoning Ordinance as written in 1970 contained Section 29-6-G which provided, in part, the following.

> The following uses shall be permitted in the districts as indicated herein and shall comply with all regulations of the applicable district. Where a proposed use is covered by a specific permitted use provision, that provision shall apply, to the exclusion of any provision using general terminology. On receiving an application for a zoning permit for a use specifically listed in this subsection, the Zoning Officer shall determine the listed use to which it is most similar and shall enforce for the requested use all requirements applicable to the similar use . . . .

The ordinance then contained a table of permitted uses. The table was introduced into evidence. It does not specifically mention a transit mix concrete batching business. Some of the I-2 uses specified are the following.

— Agriculture or Farming, Including Processing or Sale of Products on Premises.

— Broadcasting Studios, Radio or Television.

— Correction Institutions.

— Eating Establishments.

— Landfills, Sanitary.

— Lumber Yards.

— Manufacturing or Processing:

2. Fabrication or Assembly of Products from Prestructured Materials or Components.

3. Manufacture of Foodstuffs, Textiles, Electrical Components, or Tobacco Products; Fabrication of Wood, Leather, Paper, Water, or Plastic Products.

— Quarries or Other Extractive Industries.

— Storage Yards, Except Building Material Salvage.

— Welding or Sheet Metal Working.

— Wholesale Storage or Sales, or Storage Services.

Most of these uses were also permitted in an I-3 zone. Some uses permitted in an I-3 but not in an I-2 zone were the following.

— Flammable Liquids or Gases, Bulk Storage, Above ground.

— Freight Terminals, Truck or Rail.

— Manufacturing or Processing:

1. Any Processing, or the Manufacture of any Products, from any Material (Including but Not Limited to Animal or Vegetable Matter, Chemicals or Chemical Compounds, Glass, Metals, Minerals, Stones, or Earths).

— Motor Vehicles, Agricultural Implements, or Heavy Machinery, Sale, Repair, Rental, or Storage.

The zoning ordinance also provided that "[a] building permit issued in accordance with the Building Code shall serve also as a zoning permit . . . ." Winston-Salem City Code § 29-19-A2a(2). The ordinance further provided, "[a] *Certificate of Occupancy* shall be issued by the Zoning Officer upon completion of any building or other structure, or upon completion of other preparation for site occupancy, if the requirements of this ordinance and other applicable laws or codes are complied with." *Id.* § 29-19-A2b.

Amos Speas, a Building and Zoning Officer for plaintiff since 1955, testified for plaintiff. He outlined the routine procedure for obtaining permission from the city to make a specified use of property within plaintiff's zoning jurisdiction. In 1970, Mr. Speas was assisted by six building inspectors who had the authority to interpret and apply the zoning ordinance and issue building permits, which also served as zoning permits under the Winston-Salem City Code. This was the case since the issuance of a building permit was dependent upon a prior determination by the inspector that the proposed use for the proposed site was permissible under the zoning ordinance. The inspectors answered telephone inquiries about sites and made zoning determinations over the phone. No formal or written records were kept of the verbal rulings which were relied upon by the individuals making the inquiry. When a person applied for a permit, the application was typed by the clerk, Mary Howerton, who was also authorized to approve routine permits. After a permit is issued for a site, the building inspector assigned to a particular district would visit the site in various periods of the construction to make sure the building code was being complied with and that the use of the property was permissible in the particular zoning district. Finally, a certificate of occupancy which authorized a specific use of the property would be issued after a final inspection. Speas identified two applications for building permits submitted by defendant's corporate predecessor in July and August 1970 for the property in question to erect an office building and a business building and two permits for those proposed uses which were issued. Neither the application nor the permits mentioned a concrete mixing operation. Speas acknowledged that a concrete mixing operation is not within the listed uses for an I-2 zone nor any other zone. Plaintiff's employees could not locate the certificates of occupancy for the buildings in question. Speas denied speaking with any of the inspectors or the clerk authorized to issue permits about the property in question nor did he indicate to any employee of defendant that a concrete mixing operation would be permitted on the site in question.

The six building inspectors employed by plaintiff in 1970 denied speaking with their clerk or any representative of defendant about the property in question. The inspector assigned to

the district in which the property was located made four site inspections in July and August of 1970. He denied observing any equipment or structures. He inspected the footings for the proposed office building. He never observed a hopper and conveyor system which would indicate defendant intended to operate a concrete mixing operation on the site. Howerton, the clerk, testified she could not recall typing defendant's application nor talking with Sid Hoots, the principal officer of defendant, about a proposed concrete mixing operation on the site. She testified if she had spoken with him about such, she would have put it on his permit application.

Defendant's evidence tends to show the following. The hopper or storage bin in which sand and gravel are stored was erected in late June or early July 1970. Sid Hoots testified that at the time he applied for the permits in July 1970, he told the clerk and one of the inspectors that one of the buildings would house the controls for his concrete plant. He stated that the clerk and the inspector checked the property for the proposed zoning and issued two building permits for the property.

Defendant's operation consists of the storage of processed and manufactured materials, including sand, gravel and cement. When an order is received, the materials are carried by a conveyor system to a point where they are combined with water and placed in a truck with a revolving chamber. The chemical process of hydration from which concrete is produced takes at least forty-five minutes and occurs while the truck is enroute to its destination.

The case was submitted to the jury on three issues.

1. Did the zoning officer of the City of Winston-Salem make a determination on August 2, 1976 that the defendant's use of the property in question for the operation of a ready-mix concrete batching plant was a violation of the zoning ordinance and did not comply with the zoning classification of I-2 (Limited Industrial)?

2. Is the defendant presently continuing to use the property in question for the operation of a ready-mix batching plant?

3. Did the zoning officer of the City of Winston-Salem, pursuant to two applications made by the defendant in 1970, determine that the transit mix use of the defendant was most nearly similar to a use or uses designated in the Zoning Table of Permitted Uses under Industrial-2 uses?

The jury answered the first two issues in the affirmative and the third issue in the negative. Defendant appeals.

*Womble, Carlyle, Sandridge and Rice, by Roddey M. Ligon, Jr., and Anthony H. Brett; Pfefferkorn and Cooley, by William G. Pfefferkorn and J. Wilson Parker, attorneys for plaintiff appellee.*

*Hutchins, Tyndall, Bell, Davis and Pitt, by Fred S. Hutchins, Jr.; Booe, Mitchell, Goodson and Shugart, by William S. Mitchell, attorneys for defendant appellant.*

VAUGHN, Judge.

[1] Defendant contends the issues as submitted were not broad enough to embrace all the relevant evidence and questions involved. It further contends it was improper to submit the first and second issues because those issues were not controverted in the pleadings, were unnecessary and were confusing to the jury. Defendant submitted three alternative issues that essentially required the jury to decide whether defendant's operation was in violation of the zoning ordinance. This was not a determination for the jury. The determination of whether a specific use of a piece of property conforms to the zoning ordinance is a question of law. *Moyer v. Board of Zoning Appeals,* 233 A. 2d 311 (Me 1967); *Crary Home v. Defrees,* 16 Pa. Commw. Ct. 181, 329 A. 2d 874 (1974). As such, the determination is made by the local zoning board and is reviewable by the courts as a matter of law. The issue defendant contends was for the jury was a matter of law for the courts to determine. Defendant did not seek a ruling from the trial court nor did it raise the issue on appeal. The only factual question for the jury was whether a determination was made pursuant to the zoning ordinance in 1970 that the operation of defendant would be permitted. This was the essence of the third issue presented to the jury for determination.

City of Winston-Salem v. Concrete Co.

The first and second issues as submitted to the jury did not need resolution. Defendant conceded that a zoning officer made a determination on 2 August 1976 that its ready-mix concrete batching plant was in violation of the zoning ordinance and that it was continuing to operate the facility. Defendant admitted this in the pleadings. It only denied that the use was unlawful. The legality of the determination was not, as we have noted, a question of fact for the jury. Defendant contends it was prejudiced by the submission of these matters on which there was no controversy raised by the pleadings. The trial judge, however, gave the jury what amounted to a peremptory instruction on the two issues. The only instruction on the two issues was the following.

> I will discuss these issues one at a time and explain the law which you consider as you deliberate upon your verdict. The first two are going to be very short and very easy to discuss. The burden is on the Plaintiff on the first two issues. The Court instructs you that if you believe what all the evidence tends to show, you will answer Issue No. 1 "Yes" and Issue No. 2 "Yes." If you do not believe any of the evidence, you will of course answer them "No." But if you believe what all the evidence tends to show, you will answer those two "Yes."

Although it would have been better not to have submitted the two issues to the jury, that error, standing alone, would not require a new trial.

[2] The third issue submitted to the jury was, "Did the zoning officer of the City of Winston-Salem pursuant to two applications made by the defendant in 1970, determine that the transit mix use of the defendant was most nearly similar to a use or uses designated in the Zoning Table of Permitted Uses under Industrial-2 uses?" In his instruction to the jury, the trial judge placed the burden of proof on defendant to prove this issue by the greater weight of the evidence. In his general instruction on burden of proof, the trial judge stated, "If you are not so persuaded, or if you are unable to determine where the truth lies, it would be your duty to answer the issue against the party with the burden of proof." He instructed in part on the third issue,

"If you do not so find or if you are unable to determine where the truth is, then you will answer it 'No' in favor of the plaintiff." Defendant contends the burden of proof of this issue should have been on plaintiff. We disagree. The trial judge properly placed the burden of proof on the third issue on defendant.

Plaintiff alleged that defendant was using the property for the operation of a ready-mix concrete batching plant in violation of the zoning ordinance. Defendant, in its answer, made a denial that its operations violated the zoning ordinance by its specific answers to the paragraphs of plaintiff's complaint. This was followed by a separate defense to the effect that a city zoning officer had made a determination in August 1970 which approved the use of the property as a concrete mixing plant. Defendant pled this defense "in bar of plaintiff's claim for relief." This was an affirmative defense to plaintiff's claim that the operation was in violation of the zoning ordinance. "The defendant, of course, has the burden of establishing all affirmative defenses, whether they relate to the whole case or only to certain issues in the case. As to such defenses, he is the actor and has the laboring oar." *Williams v. Insurance Co.*, 212 N.C. 516, 517-18, S.E. 728, 729 (1937); *Jones v. Insurance Co.*, 254 N.C. 407, 119 S.E. 2d 215 (1961). The city had the burden of proving the existence of an operation in violation of its zoning ordinance. It was defendant's burden to prove the city had already made a determination that the operation was permissible and did not violate the zoning ordinance.

[3] Defendant contends the trial judge erred in his instruction concerning estoppel. Estoppel had been raised as a defense to the action. This issue was completely removed from the case as a defense in the first appeal. A city cannot be estopped to enforce a zoning ordinance against a violator due to the conduct of a zoning official in encouraging or permitting the violation. *Helms v. Charlotte*, 255 N.C. 647, 122 S.E. 817 (1961); *Raleigh v. Fisher*, 232 N.C. 629, 61 S.E. 2d 897 (1950). The Court in the first appeal of the case recognized that estoppel did not bar a city. The Court also noted that in this case, if a zoning officer approved the use in 1970, "the question of estoppel does not arise because the zoning officer, acting under authority of the ordinance, made a reasonable, justifiable and lawful deter-

mination as to the classification of the use." 37 N.C. App. at 190, 245 S.E. 2d at 538. The trial judge instructed the jury on the issue of estoppel in a zoning case to the following effect.

There was evidence then that the Hoots Construction Company, which was the correct and proper corporate name in 1970 when the applications were filed and permits were issued, changed its name but remained the same corporation, changed its name to Hoots Concrete Company, Incorporated. That following this there were some complaints to the City Board and that an investigation followed, as a result of which the zoning officer for the City in August of 1976 made a determination, which you will recall, in writing to Hoots Concrete Company and determined that the defendant's use of the property in question for the operation of a ready-mix concrete batching plant was a violation of the zoning ordinance and did not comply with the zoning ordinance and did not comply with the zoning classification of I-2 (Limited Industrial). That this determination was served on Mr. Hoots and Mr. Hoots took no action with respect to it, and that thereafter he continued to and did operate a transit mix batching plant at the Indiana Avenue address that we are considering. *That thereafter in 1976 the City instituted this action to determine whether or not they were entitled to enforce the provisions of the zoning ordinance.*

. . .

Now there is, in addition to this, considerable evidence which may have some bearing on your decision that would indicate that the City with its eyes wide open, buying concrete from Mr. Hoots, accepting revenue from him under his license tax, and with the full knowledge of a number of these inspectors, permitted him to continue to operate out there. This may have some bearing on your decision as to whether or not the zoning officer in fact made a decision, but let me caution you that you should not use it for any other purpose. *It is not proper that the city officials for a period of time failed or even neglected or even intentionally permitted Hoots Concrete Company to violate the law. To*

*put it as our Court does, "The City may not be estopped."*
*Now an estoppel is nothing more than you take one position*
*and then you flip-flop and take another. So the fact that he*
*was permitted to do this does not in any way prevent them*
*from coming in here now.* (Emphasis added).

Defendant contends this portion of the charge is erroneous and prejudicial for three reasons. (1) Defendant contends the issues had been concluded by the decision of this Court in the first appeal. (2) It was an instruction upon an abstract principle of law not presented by the evidence, pleadings or issues. (3) The close proximity of the estoppel instruction to the erroneous statement that "in 1976 the City instituted this action to determine whether or not they were entitled to enforce the provision of the zoning ordinance" was unduly prejudicial to defendant. Defendant's first two objections are without merit. The trial judge correctly instructed that estoppel was not a defense. It was a necessary part of the charge. The jurors applying their own sense of equity and fairness might have decided plaintiff should have been estopped where there was evidence to the effect that plaintiff issued business licenses to defendant, purchased concrete from defendant and allowed the operation for a number of years. An instruction on estoppel was necessary in order that the jury would know that the city could not be estopped for those reasons. In the context in which they were given, however, the instructions could have been misleading. The jury could have been led to believe that even if the zoning officer had approved the concrete plant usage, the city could "flip-flop" and if it did so, be allowed "to enforce the provisions of the zoning ordinance" pursuant to the new position it elected to take. The jury could have been confused and determined they had to answer the third issue in the negative because they could not do otherwise or at least such was the opinion of the trial judge. Plaintiff's suit was not to determine whether they were *entitled to enforce* the zoning ordinance but to *enforce* the zoning ordinance by an injunction. The erroneous statement about the purpose of the case being a determination of whether the city was entitled to enforce the ordinance followed by a statement that the city could not be estopped from enforcing the ordinance by the action of its officers was prejudicial to defendant.

[4]   The trial judge refused to admit in evidence answers relating to uses listed in the table of uses as permissible in I-2 districts. Defendant's concrete mixing operation was not specifically described in any of the three types of districts zoned industrial. It was not for the jury to classify the operation. The issue before it was whether a classification had been made in 1970. Plaintiff contends the admission of the evidence would invite the jury to consider an issue of law not before it. We think the excluded evidence should have been admitted in part at least as far as it concerns the procedure for making a determination when the use applied for is not specifically listed in the ordinance. This is relevant evidence of how the zoning officer would have acted when application was made by defendant in 1970. The evidence of similar uses should also have been admitted. The relative similarity of quarry operations in the same zone was relevant to the consideration of whether the zoning official with the power to so do made a determination in 1970 contrary to the determination made in 1976.

The trial judge also excluded testimony that the machinery installed on the site in question cost $94,650.00 and that the total investment of defendant in the site was around $200,000.00. The testimony should have been admitted. It is relevant evidence that defendant had a determination in 1970 of zoning compliance because the jury might have considered that defendant would not have made the expenditure without it. It is not relevant to show detrimental reliance as an element of estoppel because estoppel is not a bar to the city's enforcement, and the jury should be so instructed.

Defendant's argument that its motion for judgment notwithstanding the verdict should have been granted is without merit. The evidence was in conflict and should have gone to the jury for its decision on whether a zoning compliance determination was made in 1970.

For the error in the charge where the estoppel instruction followed an inaccurate statement about the issues in the suit and for the errors in evidentiary admissions, defendant is entitled to a new trial. The jury must decide whether a zoning officer approved defendant's concrete mixing operation in 1970 as a

permitted I-2 use. It is defendant's burden to prove such a determination was made.

New trial.

Judges PARKER and HEDRICK concur.