TYSON, Judge, dissenting.
Cumberland County (the "County") appeals from a superior court's order reversing a decision by the Cumberland County Board of Adjustment (the "Board"). The Board had affirmed in part and modified in part a code inspector's Notice of Violations penalizing David Hampton, and wife, Mary Hampton, and ordering the demolition of improvements located on their property (collectively the "Hamptons"). The code enforcement officer had cited the Hamptons for violating the County's zoning ordinance by constructing and operating a target range on their property without applying for a zoning permit and submitting a site plan.
The County argues that the superior court erred in construing certain exceptions to and exemptions from the zoning ordinance in the Hamptons' favor. The majority's opinion asserts this Court is unable to review the superior court's order, vacates the superior court's order, and remands for further findings of fact. The superior court's conclusions of law in its order construing de novo certain exceptions to and exemptions from the zoning ordinance in the Hamptons' favor is properly *679 affirmed and remanded ultimately to the Board to dismiss the Notice of Violations. I respectfully dissent.
I. Factual & Procedural Background
The Hamptons both retired as First Sergeants with the United States Army. They purchased approximately 74-acres of land outside of any city or town limits in Cumberland County (the "Property") during September 2011. The Property is zoned as Rural Residential ("RR"). After purchasing the Property, the Hamptons applied for and were issued a Farm Identification Number from the United States Department of Agriculture Farm Services Agency ("FSA").
The Hamptons' evidence before the Board showed they had purchased the Property with the express intent to "build our final home, a running trail and firing/archery ranges...." The target ranges were constructed for the Hamptons' personal enjoyment, and "for the purpose of teaching others the fundamentals of safe gun handling and marksmanship, and the maintenance of firearms proficiency."
In a notarized letter to the Board, the Hamptons' real estate agent also stated the couple "made it clear to me from the outset that they have always planned to build ranges, so they could teach the use of firearms to others...." The Hamptons' target ranges would not be open to the public, but *779 instead would be available "by appointment-only" to "family, friends and those with similar interests...." In another notarized letter submitted to the Board, a friend of the Hamptons stated that the ranges were made available to the Hamptons' "family, friends and formal students...."
The Hamptons started clearing land for a target range in May 2012 and cleared a 25-yards long target range that summer. David Hampton began using that range for personal use and also to instruct others in defensive handgun methods, rifle and carbine training, and tactical pistol uses. The Hamptons expanded the 25-yard range to 40 yards in the spring of 2013.
In the summer of 2014, the Hamptons constructed a 100-yard target range adjacent to the first range. David Hampton and his family used the ranges and continued to provide training, including instruction in firing shotguns and tactical shooting techniques, through the beginning of 2015. The Hamptons stated to the Board that they "introduced more than 30 people to the safe use of firearms, allowed 25 experienced shooters to increase their proficiency, and qualified another 26 persons for their North Carolina Concealed Carry Handgun Permit" over the course of approximately two years.
*680 On 6 May 2015, a Cumberland County code enforcement officer (the "Officer") obtained an administrative warrant to inspect the Property, after a North Carolina Department of Environmental and Natural Resources official reported a target range being located on the Property. After inspecting the Property, the Officer issued a Notice of Violations, which cited the Hamptons for lack of an approved site plan or zoning permit as purportedly required by the zoning ordinance. The Officer ordered the Hamptons to raze the firing range.
The Hamptons appealed the Notice of Violations to the Board. The Board conducted a quasi-judicial hearing on 20 August 2015. The Board heard sworn testimony from witnesses and received documentary evidence. Fourteen members of the public, who were not parties to the proceeding, testified under oath to the Board during the course of the meeting.
At the conclusion of the hearing, the Board found certain facts, voted to modify the Notice of Violations from requiring razing of the target range to "ceas[ing] any use of the firing range as it conflicts with the Cumberland County Ordinance[,]" and to affirm the Notice of Violations as modified. These findings and conclusions are stated in the Board's written order dated 14 September 2015. The Board's order labeled the following as "findings of fact":
1. The Hamptons purchased the subject property September 26, 2011, and began construction of the firing range thereafter.
2. Mrs. Hampton testified that only a small berm had been constructed on the property in April 2013.
3. The Hamptons have continued to improve and expand the firing range until they were contacted by DENR in May 2015.
4. The Hamptons have not used the subject property for a residence but have obtained a permit to install a septic tank and intend to construct a dwelling on the property.
5. The use of the property for a firing range does not constitute a farm or a farm use on that portion of the property on which the firing range is constructed.
6. Section 107 of the Cumberland County Zoning Ordinance has required a zoning permit for any use of land since the amendments of June 20, 2005.
*681 7. The Hamptons do not have a permit for the use of their property as a firing range.
8. The Hamptons have not applied for a permit for the use of their property as a firing range.
The Hamptons filed a petition for writ of certiorari to the Cumberland County Superior Court on 2 October 2015 and filed an amended petition for writ of certiorari on 3 November 2015.
The Hamptons' amended petition challenged the Board's order on several grounds and alleged the Board had failed to: (1) exclude certain inadmissible evidence; (2) follow proper procedure in making findings of fact; and, (3) provide the Hamptons with procedural *780 due process. The Hamptons also alleged that the Board had acted arbitrarily and capriciously, made findings without sufficient or supporting evidence, and committed errors of law in its decision. The Hamptons petitioned the Cumberland County Superior Court to "remand this matter to the [Board], directing it to dismiss the Notice of Violation[s] and recognize the legal, non-conforming use of the [Property], inter alia , for the non-commercial use of the [Hamptons], their family and friends as a sport shooting range."
The superior court heard the Hamptons' appeal on 28 March 2016 and entered an order, which declared the Hamptons' "non-commercial use of the 100-yard range facility for target shooting and weapon sighting with family and friends is a legal use of their property."
The superior court reversed the Board's decision for "errors at law in its legal interpretation" of the "occasional target practice" exception set forth in the zoning ordinance amendment (the "Text Amendment"). The superior court concluded that "Petitioners' non-commercial use of the 100-yard range facility is a reasonable and incidental use of the property as both a home and farm site[,]" but that "any use of the property for a commercial firing range would subject the property to the permit requirements of the currently existing Firing Range Ordinance." The County timely filed its notice of appeal on 12 May 2016.
II. Standard of Review
A. Review of the Board's order by the Superior Court
"The [County bears] the burden of proving the existence of an operation in violation of its zoning ordinance." City of Winston-Salem v. Hoots Concrete Co. , 47 N.C. App. 405, 414, 267 S.E.2d 569, 575, disc. review denied , 301 N.C. 234, 283 S.E.2d 131 (1980). The superior court's *682 standard of review of a board of adjustment's decision is determined by the particular issues raised on appeal.
"If a petitioner contends the [b]oard's decision was based on an error of law, 'de novo' review is proper." JWL Invs., Inc. v. Guilford Cty. Bd. of Adjustment , 133 N.C. App. 426, 429, 515 S.E.2d 715, 717 (1999) (citation omitted). In conducting de novo review, the superior court interprets and applies the controlling law de novo over that of the Board. Hayes v. Fowler , 123 N.C. App. 400, 404, 473 S.E.2d 442, 444-45 (1996) (citations omitted).
"When the petitioner 'questions (1) whether the agency's decision was supported by the evidence or (2) whether the decision was arbitrary or capricious, then the reviewing court must apply the "whole record" test.' " ACT-UP Triangle v. Comm'n for Health Servs. of the State of N.C. , 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (quoting In re Appeal by McCrary , 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (1993) ). When applying the whole record test, the superior court examines all competent evidence in the record to determine whether the Board's decision was legally correct and supported by the evidence. Myers Park Homeowners Ass'n v. City of Charlotte , 229 N.C. App. 204, 208, 747 S.E.2d 338, 342 (2013) (citation omitted).
When a petition for writ of certiorari from a board of adjustment decision involves both standards of review, the superior court may "apply both standards of review if required, but the standards should be applied separately to discrete issues." Blue Ridge Co., L.L.C. v. Town of Pineville , 188 N.C. App. 466, 469-70, 655 S.E.2d 843, 846 (2008) (citing Sun Suites Holdings, LLC v. Bd. of Aldermen of Town of Garner , 139 N.C. App. 269, 273-74, 533 S.E.2d 525, 528 (2000) ).
In reviewing the decision of a board of adjustment, the superior court must determine whether:
1) the [b]oard committed any errors in law; 2) the [b]oard followed lawful procedure; 3) the petitioner was afforded appropriate due process; 4) the [b]oard's decision was supported by competent evidence in the whole record; and 5) [whether] the [b]oard's decision was arbitrary and capricious.
Overton v. Camden Cty. , 155 N.C. App. 391, 393, 574 S.E.2d 157, 159 (2002) (alterations in original) (quoting Capital Outdoor, Inc. v. Guilford Cty. Bd. of Adjustment , 152 N.C. App. 474, 475, 567 S.E.2d 440, 441 (2002) (citation omitted)); see also *781 N.C. Gen. Stat. §§ 153A-349 *683 and 160A-393(k) (2015) (establishing the scope of review on appeals from a board of adjustment in counties and cities, respectively, to superior court).
B. Review of the Superior Court's order
Appellate review of a superior court's interpretation of a zoning ordinance is conducted de novo , and this court applies the same principles of construction utilized in interpreting statutes. Fort v. Cty. of Cumberland , 235 N.C. App. 541, 549, 761 S.E.2d 744, 749 (2014). "Our review asks two questions: Did the trial court identify the appropriate standard of review, and, if so, did it properly apply that standard?" Morris Commc'ns Corp v. City of Bessemer City Zoning Bd. of Adjustment , 365 N.C. 152, 155, 712 S.E.2d 868, 870 (2011) (citation omitted).
A superior court's legal conclusions concerning a board of adjustment's decision are reviewed de novo for errors of law. Id. When such review would be dispositive, this Court may also review issues on appeal de novo from a superior court's review of a board of adjustment's decision, irrespective of either the board's or the superior court's treatment of them. Id. at 158-59, 712 S.E.2d at 872 ("Remand is not automatic when an appellate court's obligation to review for errors of law can be accomplished by addressing the dispositive issue(s). Under such circumstances, this Court can determine how the [superior] court should have decided the case upon application of the appropriate standards of review." (internal quotation marks and citations omitted) (emphasis in original)).
III. Analysis
N.C. Gen. Stat. § 153A-349 provides that when reviewing a board of adjustment decision, the superior court "may affirm the decision, reverse the decision and remand the case with appropriate instructions, or remand the case for further proceedings." N.C. Gen. Stat. § 153A-349 (applying the provisions of N.C. Gen. Stat. § 160A-393 to appeals of the decisions of counties); N.C. Gen. Stat. § 160A-393(l ). The statute also provides specific procedures in the event the superior court does not affirm a board of adjustment decision in its entirety.
If the court concludes that the decision by the decision-making board is ... based upon an error of law, then the court may remand the case with an order that directs the decision-making board to take whatever action should have been taken had the error not been committed or to take such other action as is necessary to correct the error.
Id.
*684 As noted, the interpretation and application of a zoning ordinance is subject to de novo review by the superior court. Welter v. Rowan Cty. Bd. of Comm'rs , 160 N.C. App. 358, 362, 585 S.E.2d 472, 476 (2003). The superior court concluded the Board had "made errors at law in its legal interpretation" and reversed the Board's decision, The superior court properly recognized its role of de novo review of the Board's legal conclusions under the statute and precedents in its order. On the proper interpretation of zoning ordinances, our Supreme Court has repeatedly stated:
Zoning regulations are in derogation of common law rights and they cannot be construed to include or exclude by implication that which is not clearly [within] their express terms. It has been held that well-founded doubts as to the meaning of obscure provisions of a Zoning Ordinance should be resolved in favor of the free use of property. Yancey v. Heafner , 268 N.C. 263, 266, 150 S.E.2d 440, 443 (1966) (citation and quotations marks omitted); see also Vance S. Harrington & Co. v. Renner , 236 N.C. 321, 324, 72 S.E.2d 838, 840 (1952) ("Every person owning property has the right to make any lawful use of it he sees fit, and restrictions sought to be imposed on that right must be carefully examined...."); Lambeth v. Town of Kure Beach , 157 N.C. App. 349, 354, 578 S.E.2d 688, 691 (2003) ("Zoning ordinances derogate common law property rights and must be strictly construed in favor of the free use of property.").
Dellinger v. Lincoln Cty. , --- N.C. App. ----, ----, 789 S.E.2d 21, 27, review denied , 369 N.C. 190, 794 S.E.2d 324 (2016).
The majority's opinion correctly notes, "the use of firearms is integral to the facts of *782 this case." Although the parties have not advanced any arguments related to the Second Amendment to the Constitution of the United States, the facts and legal issues of this case implicate the Hamptons' right to keep, bear and use arms. See U.S. Const. amend. II. This Constitutional implication reinforces our strict construction of zoning restrictions on possession and uses of privately owned property. See Dellinger , --- N.C. App. at ----, 789 S.E.2d at 27 ; Yancey v. Heafner , 268 N.C. 263, 266, 150 S.E.2d 440, 443 (1966) ; see also Vance S. Harrington & Co. v. Renner , 236 N.C. 321, 324, 72 S.E.2d 838, 840 (1952).
A. Relevant Sections of the Cumberland County Zoning Ordinance
Several years before the Hamptons purchased the Property, the County adopted an overly broad zoning ordinance section in 2005 *685 making it "unlawful to commence the ... use of any land or building ... until the [the County] issue[s] a zoning permit for such work or use." Cumberland Cty., N.C., Zoning Ordinance § 107.
Since 2010, the County's zoning ordinance has expressly exempted from permitting requirements under the ordinance any farm uses or purposes conducted on a bona fide farm:
The provisions of this ordinance do not apply to bona fide farms. This ordinance does not regulate croplands, timberlands, pasturelands, orchards, or other farmlands, or any farmhouse, barn, poultry house or other farm buildings, including tenant or other dwellings units for persons working on said farms, so long as such dwellings shall be in the same ownership as the farm and located on the farm. To qualify for the bona fide farm exemption , the land must be a part of a farm unit with a North Carolina State Cooperative Extension Office or United State Department of Agriculture farm number assigned . Residences for non-farm use or occupancy and other non-farm uses are subject to the provisions of this ordinance.
Cumberland Cty., N.C., Zoning Ordinance § 109 (2010) (the "Farm Exemption") (emphasis supplied). It is undisputed the Hamptons applied for and obtained a Farm Identification Number for this Property, which was issued by the FSA.
The following year in April of 2011, and several months before the Hamptons purchased the Property the following September, the County Board of Commissioners (the "Commissioners"), recognizing the error in its ordinance, also amended the 2005 zoning ordinance to provide:
All uses of property are allowed as a use by right except where this ordinance specifies otherwise or where this ordinance specifically prohibits the use. In the event, a use of property is proposed that is not addressed by the terms of this ordinance, the minimum ordinance standards for the use addressed by this ordinance that is most closely related to the land use impacts of the proposed use shall apply.
Cumberland Cty., N.C., Zoning Ordinance § 402 (emphasis supplied).
In 2012, maintaining and using target ranges were not specifically addressed in the ordinance. The County's zoning staff determined that standards applicable for outdoor recreation "are the most *686 similar and more closely address the land use impacts that would result from an outdoor firing range than any other use specific provisions in our ordinance."
After the Hamptons had constructed their target range on the Property, on 17 June 2013, the Commissioners also passed the Text Amendment to the zoning ordinance, which specifically addresses the zoning and permitting of target ranges, which added the following definition and exemptions:
Firing Range, Outdoor : A facility, including its component shooting ranges, safety fans or shortfall zones, parking areas, all structures for classrooms; administrative offices, ammunition storage areas and other associated improvements, designed for the purpose of providing a place for the discharge of various types of firearms or the practice of archery. For purposes of this ordinance, outdoor firing ranges are a principal use of property and therefore, [sic] shall not be considered incidental or accessory. This ordinance is exclusive of occasional target practice by individuals on *783 property owned or leased by the individuals, sighting of weapons for purposes of hunting, or temporary turkey shoots conducted on a property no more than 12 days in any calendar year.
Cumberland Cty., N.C., Zoning Ordinance Text Amendment P11-20 (2013) (emphasis supplied).
In addition to the exemption for "occasional target practice," "sighting of weapons," and "temporary turkey shoots," the Text Amendment provides a second retroactive exemption for all firing or target ranges in operation as of 20 June 2005. The Hamptons do not contend that their Property falls within this second exemption, as that date occurred prior to their purchase of the Property. The Text Amendment also added permitting requirements and restricted the operation of non-exempt outdoor firing ranges to sites no smaller than 200 acres. Id.
At the time the Hamptons purchased the Property, no County ordinance expressly regulated target ranges. Except for the exemptions for bona fide farm purposes and uses in the statute and ordinance, and the 2011 Amendment to the ordinance, providing "all uses of property are allowed as a use by right," the Property was otherwise subject to zoning regulation consistent with the most analogous land use ordinance standards.
*687 Since 17 June 2013, the operation of "outdoor firing ranges", which expressly includes "[a] facility, including its component shooting ranges, safety fans or shortfall zones, parking areas, all structures for classrooms; administrative offices, ammunition storage areas ..." requires permitting, unless the property was issued a farm identification number for a bona fide farm use or purpose under Cumberland Cty., N.C., Zoning Ordinance § 109 (2010) or the uses fall within the stated exemptions provided in the Text Amendment. Id.
B. Bona Fide Farm Use
1. Standard of Review
Error will not be presumed on appeal. "Instead, the ruling of the court below in the consideration of an appeal therefrom is presumed to be correct." Beaman v. Southern Ry. Co. , 238 N.C. 418, 420, 78 S.E.2d 182, 184 (1953) (internal quotation marks and citation omitted). It is the appellant's burden to show error occurring at the superior court.
This Court has also repeatedly emphasized that it is not the role of the appellate court to create an appeal for an appellant or to supplement an appellant's brief with legal authority or arguments not contained therein. See, e.g., Eaton v. Campbell , 220 N.C. App. 521, 522, 725 S.E.2d 893, 894 (2012) (citations omitted).
2. County's Argument
The County argues that the superior court erred in concluding the Board had misinterpreted the exemption in the Text Amendment concerning "occasional target practice by individuals." The County also contends the superior court improperly invalidated the Notice of Violations, based upon a conclusion that the Hamptons used their property "for target shooting and weapon sighting with family and friends." The County also argues the superior court erred in concluding such use was "incidental to the[ir] enjoyment of the [Property]," such that the Hamptons' use is allowed without permitting under either, or both, of the County's Farm Exemption or Text Amendment exemptions.
The County directs our attention to evidence it contends shows that: (1) the Hamptons' use of the Property for firearms practice and training was routine and not occasional; (2) the ranges were not used for "target practice" but instead for formal training; and (3) the users exceeded the scope of "friends and family" to include "formal students."
The County specifically points to findings of fact 14 and 15 in the superior court's order as being contradicted by competent evidence *688 presented before the Board. The County also argues the superior court's conclusion of law 7 is contrary to law.
Findings of fact 14 and 15 of the superior court's order read:
14. The Petitioners' principal use of the subject property is for the Petitioners' home and farming operations.
15. The range is incidental to the enjoyment of the Petitioners' home and farm.
*784 Conclusion of law 7 in the superior court's order reads:
7. The Petitioners' non-commercial use of the 100-yard range facility is a reasonable and incidental use of the property as both a home and farm site.
Findings of fact 14 and 15 in the superior court's order are summarizations of the uncontradicted evidence presented to the Board that the Hamptons' target range is an incidental use of their Property within bona fide farm purposes, based upon their improvements and uses after being issued a Farm Identification Number by the FSA. See Cannon v. Zoning Bd. of Adjustment of City of Wilmington, 65 N.C. App. 44, 47, 308 S.E.2d 735, 737 (1983) (finding it permissible for trial court to recite uncontroverted evidence in findings of fact section of order).
The superior court's conclusion of law 7 is supported by both findings of fact 14 and 15, which are recitations of the competent, uncontroverted evidence of the Hamptons' uses and improvements after having been issued a Farm Identification Number by the FSA. Conclusion of law 7 is a proper interpretation and conclusion, based on the bona fide farm purposes exemption contained in both N.C. Gen. Stat. § 153A-340 and § 109 of the Cumberland County Zoning Ordinance.
N.C. Gen. Stat. § 153A-340 provides bona fide farm purposes are exempt from permitting and use requirements of county zoning ordinances. N.C. Gen. Stat. § 153A-340 (2015).
"[W]hen the General Assembly granted authority to the counties to regulate and restrict the use of land by means of zoning ordinances in N.C. Gen. Stat. § 153A-340, including the power to regulate and restrict the 'use of buildings, structures, and land for trade, industry, residence, or other purposes,' it carved out one important exception to the counties' jurisdiction: the authority to regulate land being used for '[b]ona fide farm purposes.' Specifically, county zoning 'regulations may not affect bona fide farms, but *689 any use of farm property for nonfarm purposes is subject to the regulations.' N.C. Gen. Stat. § 153A-340. Although the statute does not define "bona fide farm," it does define '[b]ona fide farm purposes' to 'include the production and activities relating or incidental to the production of crops, fruits, vegetables, ornamental and flowering plants, dairy, livestock, poultry, and all other forms of agricultur[e,] [as defined in G.S. 106-581.1. Id .]' "
Sedman v. Rijdes , 127 N.C. App. 700, 703, 492 S.E.2d 620, 622 (1997) ; N.C. Gen. Stat. § 153A-340 (2015).
N.C. Gen. Stat. § 153A-340(a) provides a limited delegation of power to counties to implement zoning regulations. However, the statute preserves un-delegated power to the General Assembly and ultimately to the People, and severely limits the county's delegated police power to enact zoning regulations which may affect and purport to regulate property uses under the bona fide farm exemption. All property uses under bona fide farm purposes, with the exception of swine farms, are exempt from zoning permitting and use regulations. N.C. Gen. Stat. § 153A-340(b).
N.C. Gen. Stat. § 153A-340(b) provides:
(b)(1) ... This subsection does not limit regulation under this Part with respect to the use of farm property for nonfarm purposes.
(2) ... For purposes of determining whether a property is being used for bona fide farm purposes , any of the following shall constitute sufficient evidence that the property is being used for bona fide farm purposes :
....
e. A Farm Identification Number issued by the United States Department of Agriculture Farm Service Agency.
N.C. Gen. Stat. § 153A-340(b)(1)-(2) (emphasis supplied).
"When the language of a statute is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning." Correll v. Div. of Soc. Servs ., 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992) (citations omitted). The language of N.C. Gen. Stat. § 153A-340(b)(1)-(2) is clear and unambiguously provides that if the owners of real property have *785 been issued a Farm Identification Number by the FSA, then that issuance and designation under the statute constitutes "sufficient evidence the property is being used for bona fide farm *690 purposes." N.C. Gen. Stat. § 153A-340(b)(1)-(2) ; see Correll, 332 N.C. at 144, 418 S.E.2d at 235.
The County does not dispute the Hamptons applied for and were issued a Farm Identification Number by the FSA for their Property. Furthermore, the County presented no evidence that the Hamptons' Property did not qualify for a Farm Identification Number or that the FSA improperly issued a Farm Identification Number to the Hamptons for their Property to be entitled to the exemption.
Earlier this year, the General Assembly amended N.C. Gen. Stat. § 153A-340(b)(2) e to remove "A Farm Identification Number issued by the United States Department of Agriculture Farm Service Agency" from the list of factors constituting sufficient evidence of bona fide farm use in 2017. That action does not affect the facts and controlling law before us. The County cited the Hamptons in violation of the county ordinance long prior to the effective date of the amendment of N.C. Gen. Stat. § 153A-340(b)(2). N.C. Sess. Laws 2017-108, effective 12 July 2017.
Because the Hamptons were undisputedly issued a Farm Identification Number by the FSA for the Property, their use of the Property for a bona fide farm purpose is established under the statute and ordinance as a matter of law. N.C. Gen. Stat. § 153A-340(b)(1)-(2). Their use of the property for target practice and related purposes is exempt from the County's zoning regulations under N.C. Gen. Stat. § 153A-340(b)(1) and Cumberland Cty., N.C., Zoning Ordinance § 109 (2010).
The majority's opinion asserts that finding the Hamptons' use of their property to be exempt from county zoning regulation, solely because of them having a Farm Identification Number, is in direct conflict with this Court's holding in North Iredell Neighbors for Rural Life v. Iredell Cty. , 196 N.C. App. 68, 77, 674 S.E.2d 436, 442 (2009). The instant case is not analogous with and is distinguishable from North Iredell Neighbors , as well as Cty. of Durham v. Roberts, 145 N.C. App. 665, 551 S.E.2d 494 (2001) ; Sedman , 127 N.C. App. 700, 492 S.E.2d 620 ; and Baucom's Nursery Co. v. Mecklenburg County, N.C. , 62 N.C. App. 396, 303 S.E.2d 236 (1983). None of those cases cited by the majority's opinion dealt with the issue of property having one of the five items listed in N.C. Gen. Stat. § 153A-340(b)(1)-(2), including a Farm Identification Number, which constitute sufficient evidence of bona fide farm use as a matter of law.
The majority's opinion interprets the five items listed in N.C. Gen. Stat. § 153A-340(b)(2), as only generally establishing a property is a bona fide farm. However, this interpretation contradicts the plain language of *691 the statute, which says "any of the following shall constitute sufficient evidence that the property is being used for bona fide farm purposes [.]" N.C. Gen. Stat. § 153A-340(b)(2) (emphasis supplied). The statute contains no qualification that limits the extent to which the five items listed therein expressly establish a "property is being used for bona fide farm purposes[.]" Id.
The majority opinion's interpretation of N.C. Gen. Stat. § 153A-340(b)(2) effectively overlooks or judicially "repeals" the plain statutory language that a Farm Identification Number, and the other four items in the statute, constitutes sufficient evidence that a property is being used for bona fide farm purposes. The plain language of the statute contains no such limitation. Our standards of review and canons of statutory construction do not allow the majority's "nose under the tent." We are compelled to give a statute "its plain and definite meaning." Under controlling canons of construction and the lack of any ambiguity, such a judicially "enacted" limitation should not be read into N.C. Gen. Stat. § 153A-340(b)(2). See Correll , 332 N.C. at 144, 418 S.E.2d at 235.
The superior court properly applied de novo review to reverse the Board's legal conclusion, incorrectly labeled as Finding of Fact number 5, "that the Hampton[s'] use of the subject property for a firing range is not a permitted use under the Cumberland County Zoning Ordinance." Under strict construction *786 of the ordinance, the superior court properly applied both N.C. Gen. Stat. § 153A-340(b)(1)-(2) and the express farm exemption in the Cumberland County Zoning Ordinance § 109 in concluding the Hamptons' use of their Property for a target range "is a reasonable and incidental use of the property as both a home and farm site" and the uncontested fact recited in the superior court's order that the Hamptons "obtained a farm number from the United States Department of Agriculture for the subject property."
"The [County bears] the burden of proving the existence of an operation in violation of its zoning ordinance." City of Winston- Salem, 47 N.C. App. at 414, 267 S.E.2d at 575. It is the County's burden as the appellant to show reversible error occurring at the superior court. See Beaman , 238 N.C. at 420, 78 S.E.2d at 184.
The County does not contest the Hamptons' evidence that they applied for and were issued a Farm Identification Number from the FSA for the property at issue. The County failed to meet or carry its burden of proving the existence of any violation of its zoning ordinance. The County's assignments of error in the superior court's findings of fact 14 and 15 and that portion of conclusion of law 7 are properly overruled.
*692 C. Commercial v. Non-Commercial
The County argues the superior court made an incorrect distinction between commercial and non-commercial uses in its conclusions of law 7 through 10 in interpreting the County zoning ordinance. The superior court's conclusions of law 7 through 10 read as follows:
7. The Petitioners' non-commercial use of the 100-yard range facility is a reasonable and incidental use of the property as both a home and farm site.
8. The Petitioners' non-commercial use of the 100-yard range facility for target shooting and weapon sighting with family and friends is a legal use of their property.
9. However, any use of the property for a commercial firing range would subject the property to the permit requirements of the currently existing Firing Range Ordinance.
10. Furthermore, any use of the property for a non-commercial firing range exceeding a distance of 100 yards may make the use of the firing range non-incidental to the use of the property for farm and residential purposes. (Emphasis supplied.)
The Text Amendment applying to target ranges, County Zoning Ordinance § 402, and the County's Farm Exemption make no distinction between "commercial" and "non-commercial" uses. Furthermore, the bona fide farm exemption provided by N.C. Gen. Stat. § 153A-340(b)(1)-(2) and the county zoning ordinance make no distinction between "commercial" and "non-commercial" bona fide farm purposes when exempting uses of property from regulation and required permitting under county zoning ordinances. N.C. Gen. Stat. § 153A-340(b)(1)-(2).
The only evidence in the record to support the distinction made by the superior court between "commercial" and "non-commercial" uses comes from the testimony of the Code Enforcement Officer, who had cited the Hamptons in violation of the zoning ordinances. The officer testified at the Board's hearing that his basis for issuing the Notice of Violations was that he believed the target range was being used for "commercial activity."
As correctly noted and argued by the County, the zoning ordinances and the statutes do not distinguish between "commercial" and "non-commercial" uses of target ranges. Furthermore, the Notice of Violations issued to the Hamptons does not state it was issued because *693 their property was being used for "commercial purposes" as opposed to "non-commercial" or not for "bona fide farm purposes."
Also, charging admission or fees for or selling items produced by rural or agricultural activities, such as: hay rides; corn mazes; tractor pulls or contests; boarding and riding stables and lessons; rodeos; petting zoos; livestock; milk and cheese sales; hunting and fishing leases or access; turkey and ham shoots and contests; saw mills and wood sales; selling plants and seedlings; egg production and sales; winery tours and tastings; "you-pick" fruit and vegetable fields and gardens;
*787 roadside stands; and many other related activities, are part and parcel of North Carolina's common rural heritage and farming operations and are protected agritourism. See N.C. Gen. Stat. § 106-581.1(6) (2015) (including "agritourism" as within the meaning of "agriculture"), N.C. Gen. Stat. § 153A-340(b)(2) (including forms of "agriculture," as defined in N.C. Gen. Stat. § 106-581.1, to constitute bona fide farm purposes that are exempt from zoning).
The superior court's use of "non-commercial" and "commercial," specifically conclusion of law 9, stating "any use of the property for a commercial firing range would subject the property to the permit requirements of the currently existing Firing Range Ordinance[,]" is without any basis in the either the applicable County zoning ordinances or under North Carolina's general statutes. Those portions of the superior court's conclusions of law 7 through 10, to the extent they purport to establish "non-commercial" and "commercial" uses not mentioned in the ordinance, should be disregarded as surplus. Cumberland Cty., N.C., Zoning Ordinance § 402 ("All uses of property are allowed as a use by right....").
The County has not challenged, and the Hamptons have not cross-appealed, that portion of the superior court's conclusion of law 10, which states the Hamptons' use of their property as a firing range would become non-incidental to a farm use or other exempt purposes, if it were expanded to exceed 100 yards in length. Fran's Pecans, Inc. v. Greene , 134 N.C. App. 110, 112, 516 S.E.2d 647, 649 (1999) (stating that "[f]ailure to [challenge a conclusion] constitutes an acceptance of the conclusion and a waiver of the right to challenge said conclusion as unsupported by the facts.") In light of the lack of challenges from either party, the superior court's conclusion of law 10 properly remains undisturbed.
IV. Conclusion
"Zoning regulations are in derogation of common law rights and they cannot be construed to include or exclude by implication that which *694 is not clearly [within] their express terms. It has been held that well-founded doubts as to the meaning of obscure provisions of a Zoning Ordinance should be resolved in favor of the free use of property." Yancey, 268 N.C. at 266, 150 S.E.2d at 443 (citation and quotation marks omitted). The superior court properly construed the statutes and ordinances consistent with these canons of construction.
"The longstanding rule is that there is a presumption in favor of regularity and correctness in proceedings in the [superior] court, with the burden on the appellant to show error." L. Harvey & Son Co. v. Jarman , 76 N.C. App. 191, 195-96, 333 S.E.2d 47, 50 (1985) (citing In re Moore , 306 N.C. 394, 293 S.E.2d 127 (1982), app. dism. , 459 U.S. 1139, 103 S.Ct. 776, 74 L.Ed.2d 987 (1983) ). The County, as the appellant, had the burden on appeal to show reversible error in the superior court's order. They have failed to do so here. The portion of the superior court's order, which reversed the Board of Adjustment's conclusion and decision, that the Hamptons' use of their property for target practice of firearms and sighting of weapons was in violation of the County zoning ordinance's permit and site plan requirements, is properly affirmed.
As the County correctly notes, the superior court's conclusion to distinguish between "commercial" and "non-commercial" uses, which is based solely upon the County's code enforcement officer's testimony of his motivation to issue the Notice of Violations, is surplus and without any basis under either the bona fide farm use provisions under the controlling statutes or the farm and Text Amendment exemptions in the County zoning ordinance.
The superior court's conclusion of law 10, which states the Hamptons' use of their property as a target range would become non-incidental to bona fide farm uses, if it were expanded to exceed 100 yards in length, is unchallenged by either party and properly remains undisturbed.
The superior court's order should be affirmed and remanded to the superior court with instructions to further remand to the Board for the purpose of rescinding the Notice of Violations. I respectfully dissent.